No. 17,480.

FOSTER CLINE, ET AL. *v.* JAMES T. MCDOWELL, JR.

(284 P. [2d] 1056)

Decided June 20, 1955.

Mr. FOSTER CLINE, for plaintiffs in error.

Mr. BEN L. WRIGHT, JR., for defendant in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

DEFENDANT in error, as petitioner, in two certain causes of action later consolidated for trial, obtained judgment and decrees in the district court of Park county for the change of points of diversion and place of use of certain water rights in Water District No. 23, Irrigation Division No. 1, State of Colorado. By one of these decrees petitioner is authorized to change the point of diversion of 16 cubic second feet of water from the headgate of the Canon Ditch, and of its priority No. 7 for 57.95 cubic second feet of water, to the headgate of the Small Ditch, being priority No. 8 on the same stream, a distance of 3½ to 4 miles upstream from the Canon Ditch. The second decree authorizes the change of point of diversion of 20 cubic second feet of water from the Guiraud Ditch, and of its priority No. 6 for a total 48.97 cubic second feet of water of which it would appear that 8.70 cubic second feet has previously been changed to a new headgate about one mile upstream from the head-

gate of the Guiraud Ditch. All of said ditches and water rights are from the Middle Fork of the South Platte river and are exclusively used for irrigation.

Plaintiff in error Cline, appearing pro se and on behalf of McDannald, filed protests to the original petitions, appeared at the hearing, and resisted the entry of said judgments and decrees. The basis of the protests are: (1) That all or a part of the waters for which the point of diversion is sought to be changed have been abandoned; and (2) that if said changes be permitted, an enlarged use of water will result to the prejudice and injury of protestants and others in said water district similarly situated.

Counsel for plaintiffs in error, following his statement of the case in his opening brief filed in this Court, and presumably with the provisions of Rule 111 (f), R.C.P. Colo., in mind, states the grounds upon which he relies for reversal of the judgments of the trial court in manner following:

"Matters for which plaintiff in error claims the case should be reversed or Specification of Points:

"1. The Court erred in permitting the stipulation of petitioner with the Denver Board of Water Commissioners and the stipulation for the consolidated ditches of Water District No. 2.

"2. The findings and orders of the court are contrary to the evidence and contrary to the law."

With respect to the first ground, it appears from the record that prior to the date of the hearing, counsel representing the City and County of Denver acting by and through its Board of Water Commissioners, as well as counsel for the operators of certain ditches in Water District No. 2, Irrigation Division No. 1, stipulated and agreed with petitioners that, provided there were included in the decrees mutually satisfactory terms and conditions, they would have no objection to the entry of such decrees, and thereupon time was saved for the filing of protests until it could be ascertained whether

the court would approve the conditions agreed upon and include same within its decrees. The trial court did approve the suggested conditions, and the order authorizing the change of point of diversion of 16 cubic second feet of water from the Canon Ditch to the Small Ditch, is upon the condition that said water so transferred shall be diverted at the headgate of the Small Ditch by gravity flow, and further, that if at any future time said water be not used to irrigate the lands described in the decree, its point of diversion shall revert to the original headgate of the Canon Ditch. With respect to the 20 cubic second feet of water, the point of diversion of which is changed from the Guiraud Ditch to a new headgate, the conditions are: (1) That "the transferred water shall not be used at all times available but shall be used only for periodic irrigation of fertilized lands on an experimental basis." (2) That in the event the experiment is successful and, within a period of five years from the date of the entry of the decree, no water user shall show to the court upon proper protest that his water rights have been injured because of said experiment and change of point of diversion, the transfer shall become permanent; and (3) that if the experiment proves unsuccessful after a five-year period, then upon application of either the petitioner or any other user of water, the point of diversion of said transferred water right shall be restored to its original point of diversion of the Guiraud Ditch.

With respect to the last mentioned decree and the rather unusual conditions therein contained, we perhaps should add that the petitioner testified in explanation thereof that by the change of 20 cubic second feet of water from the Guiraud Ditch to a new headgate he will be able to experiment in the cultivation of a new tract of land containing approximately 194 acres for the production of hay from domestic grasses rather than, as usual in that locality, from the native grasses, and that this can be accomplished by the use of much less water than can the growing of native hay in the bottom lands.

It will be noted that in both instances some of the conditions of the decrees are in the nature of reservation solely for the benefit of the petitioner, whereas other conditions preserve the rights of other users of water from the stream to protest at a date subsequent to the entry of decree, should it develop that their irrigation rights are being detrimentally interfered with by reason thereof.

 The basis of the objection of plaintiffs in error to the receipt by the court of stipulations between Denver and District No. 2 water users, is that neither thereof were parties to the action, and that it was error on the part of the trial court to receive said stipulations in evidence; and further error to include conditions thereby agreed upon in its decrees authorizing the changes of points of diversion. Counsel apparently is laboring under the impression that in a proceeding of this nature only such persons or individuals who file protests are, in addition to the petitioner, parties to the action. Upon the filing of a petition seeking the change of point of diversion of an irrigation right, it is required by statute that all users of water which may in any way or manner be affected by the change shall be notified, and being so put upon notice, said users may enter appearance at any time prior to conclusion of the hearing upon the petition. Formal appearance may be entered through an agreement not to file protest as well as by the filing of protest itself. There would appear to be no logical reason why one so notified and so affected should be forced to file a protest in order that he might agree with the petitioner not to protest. No error was committed by the trial court in receiving the stipulation to which objection was made, nor including within the decrees the conditions therein agreed upon.

Neither is there any merit in the contention made on behalf of protestants that, by agreeing to such conditions, the petitioner admitted that the changes of points of diversion proposed by him would work injury to other

42

users. It was his contention throughout the proceeding that the allowance of his proposed changes of points of diversion would injure no one, and his consent to the imposition of said conditions that he might avoid protests on behalf of the City and County of Denver and other user parties to the stipulation cannot be construed as any confession of weakness on his part.

Referring now to the second ground upon which protestants rely for reversal, wherein they assert that the findings and orders of the trial court "are contrary to the evidence and contrary to the law," we first call attention to the fact that such is not sufficient to authorize its consideration upon review. *Platte Valley Elevators Co. v. Gebauer,* 127 Colo. 356, 256 P. (2d) 903, and cases therein cited. In Rule 111 (f), R.C.P. Colo., prescribing what each party shall set forth in his summary of argument, it is provided that, "He will be limited to the grounds so stated although the court may in its discretion notice any error appearing of record."

So that it may not be said that we have been remiss in our duty, we have searched the record in this case to ascertain whether any sufficient error appears to justify reversal or modification. We find none.

In the first place, protestants allege abandonment, thereby assuming "the burden of definitely proving abandonment as a fact by clear and convincing evidence." *Arnold v. Roup,* 61 Colo. 316, 324 et seq., 157 Pac. 206, and cases therein cited. See, also, *Commonwealth Irrigation Co. v. Rio Grande Canal Water Users Association,* 96 Colo. 478, 480, 45 P. (2d) 622. In many other Colorado decisions there is an adherence to the rule that the evidence of abandonment must be clear and convincing. From a study of the record in the instant case we are convinced that the only "abandonment" ascertainable is that protestants abandoned their charge of abandonment by wholly failing to present any substantial evidence in its support.

The burden of the argument on behalf of protestants

seems to be that if said changes of points of diversion be permitted, an increased use of water will result due to the fact that the petitioner will continue to irrigate the lands he now irrigates as well as additional lands later to be brought under cultivation. It is to be noted, however, that only portions of the decrees at the Canon and Guiraud headgates are to be transferred, and certainly the parts to which the changes of points of diversion are permitted cannot thereafter be demanded through said headgates, and the flow of water presently used in the irrigation of lands thereunder will be diminished to that extent. The record also shows that certain of the lands heretofore irrigated under the Canon and Guiraud Ditches, and for which certainly a portion of the waters adjudicated thereto were intended to be used, will no longer be irrigated, and that the new lands proposed to be irrigated will be in lieu thereof; that the acreage of lands no longer to be irrigated closely approximates the new lands to be irrigated; and that the land under the new headgate will require much less water than do the bottom lands now used for the raising of hay from native grasses. All ditches are on the same stream, the return flow goes to the same place, and it is difficult to understand how it could be diminished by this changed use. Counsel argues that the law prohibits all increase in acreage of land to be irrigated under any decreed right, but wherever a change of point of diversion has been refused on that account it has affirmatively appeared that such use would materially affect the consumption of water and thus diminish the stream to the detriment of other users. It is not so much the area to be irrigated that should concern one in deciding whether a decree should be granted permitting the change of point of diversion, but the volume of stream flow is the important element to be protected. Cases of this nature all depend upon their own facts and surrounding circumstances. A change might be entirely permissible within the basin of a certain stream whereas it could not be tolerated

44

should the purpose be to carry the water to another water shed, and thus deplete the stream from which it was originally taken.

 The right to change the point of diversion is a property right exercisable in all instances where no injury will result to others (*Brighton Ditch Co. v. City of Englewood,* 124 Colo. 366, 237 P. [2d] 116), and should be granted even in instances where injury to others may result if such can be fully compensated by conditions inserted in the decree. *City of Colorado Springs v. Yust,* 126 Colo. 289, 249 P. (2d) 151; Colorado Revised Statutes, '53, 147-9-25. Also, "An actual impairment or irreparable injury to the rights of the junior appropriator must be demonstrated by evidential facts and not by potentialities." *Del Norte Irrigation District v. Santa Maria Reservoir Co.,* 108 Colo. 1, 7, 113 P. (2d) 676. In the instant case, even should there exist potentialities of possible injury to general appropriators, such users have the right to raise that issue and protect themselves under the conditions of the decrees herein.

As in *Bessemer Irrigating Ditch Co. v. Oxford Farmers' Ditch Co.,* 65 Colo. 1, 170 Pac. 178, we find no evidence in the record in the case now before us from which it can properly be said that protestants, or other general users of water in said district could, in any way, be injuriously affected by the changes of points of diversion decreed. We find no substantial or prejudicial error in the record; accordingly, the judgment of the trial court is affirmed.