STATE of Colorado ex rel. Jeris A. DANIELSON, State Engineer, and North Kiowa Bijou Ground Water Management District, Plaintiffs-Appellees,

v.

Robert VICKROY, William E. Jones, and Harvey Kobebel,
Defendants-Appellants.

No. 79SA421.

Supreme Court of Colorado,
En Banc.

April 27, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Dennis M. Montgomery, Asst. Atty. Gen., Loren L. Swick, Sp. Asst. Atty. Gen., Denver, George A. Epperson, Donald F. McClary, Edward L. Zorn, Douglas R. Vannoy, Ft. Morgan, for plaintiffs-appellees.

David J. Miller, James A. Gustafson, Greeley, for defendants-appellants.

LOHR, Justice.

Robert Vickroy appeals from a judgment on the pleadings[1] entered by the Adams County District Court, enjoining him from taking ground water by means of a horizontal perforated well casing located on specified lands in Adams County. We affirm the judgment.

This case poses a jurisdictional question with respect to litigation involving a diver-

---

1. See Rule 12(c), C.R.C.P.

sion of ground water within a designated ground water basin. Information with respect to a related case in the water court for water division 1 and a summary of the procedural history of the case before us are necessary to an understanding of the question which we must resolve.

## I.

Vickroy owns a direct-flow water right for 1.71 c. f. s. out of 10.71 c. f. s. decreed to Renner Ditch Number 1 for irrigation purposes with an appropriation date of June 1, 1888. The decree was issued August 5, 1922 by the Weld County District Court and establishes the point of diversion at a headgate on Kiowa Creek, a floodwater stream of broken surface flow, tributary to the South Platte River.

In 1974 Vickroy filed an application in the division 1 water court to change the point of diversion to a well to consist, in part, of perforated casing to be installed horizontally at a depth of twenty-two to twenty-five feet in the alluvial channel of Kiowa Creek at a location several miles downstream from the original point of diversion. See section 37–92–302(1)(a), C.R.S. 1973. A statement of opposition was filed by North Kiowa-Bijou Management District (District), a ground water management district.[2] See section 37–92–302(1)(b), C.R.S.1973. The District challenged the jurisdiction of the water court to consider the application because the proposed well[3] is within the boundaries of a "ground water management district" and within a "designated ground water basin." See sections 37–90–103(7), (9). The District contended that the Ground Water Commission had exclusive jurisdiction to consider such an application. See sections 37–90–103(8), 107, C.R.S.1973.

The matter was referred to the water referee who held a hearing and found that the "Renner Ditch" and the new well are entirely within the boundaries of the District and that the well will divert "underground water." The referee concluded that the Ground Water Commission has no jurisdiction over the Renner Ditch right or any other surface water right within any ground water management district and that the water court has jurisdiction over all such rights, including the authority to approve the requested change of point of diversion. Thereafter, based upon the stipulation of the parties, and prior to deciding the other issues in the case, the referee re-referred the application for change of point of diversion to the water judge for review of the referee's ruling with respect to jurisdiction.

Before the referee's ruling came before the water judge for consideration, the case now on appeal was filed in the Adams County District Court by the State of Colorado ex rel. C. J. Kuiper, state engineer (state engineer),[4] and the District against Vickroy.[5] The complaint averred that Vickroy's well is within the boundaries of the Kiowa-Bijou designated ground water basin and of the District; that the well diverts "designated ground water;" and that Vickroy had not obtained the permit required for such diversion under the Colorado Ground Water Management Act, sections 37–90–101 to 141, C.R.S.1973. It was further averred that the state engineer had caused to be served upon Vickroy a copy of the state engineer's order requiring Vickroy to cease and desist from the appropriation of such water by means of the well and to show cause why that well should not be plugged and abandoned, and that Vickroy had violated that order and threatened to

---

2. Background on the organization of North Kiowa-Bijou Management District is to be found in North Kiowa-Bijou Management District v. Ground Water Commission, 180 Colo. 313, 505 P.2d 377 (1973).

3. From the briefs, and argument below, we learn that the well has been completed and that it is located on lands owned by Vickroy.

4. Jeris A. Danielson was substituted for C. J. Kuiper after Danielson became the state engineer.

5. Additional claims were asserted against other defendants based upon separate and unrelated diversions of water. Only the Vickroy claim is before us on this appeal.

continue to violate the order. The plaintiffs sought injunctive relief prohibiting Vickroy from diverting designated ground water.

Vickroy filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted, or, in the alternative, for a change of venue to the water court. He relied primarily upon the ruling of the water referee that exclusive jurisdiction to consider the change of point of diversion from the headgate on Kiowa Creek to the new well was in the water court. Accordingly; he urged that the Adams County District Court had no jurisdiction to proceed. Vickroy's motion to dismiss was denied. He elected to stand upon his motion and did not file a responsive pleading. Thereafter, the plaintiffs filed a motion for entry of judgment on the pleadings under C.R.C.P. 12(c). The trial court granted that motion and enjoined Vickroy permanently from taking ground water by means of any horizontal perforated well casing at the location in question. This appeal followed.[6]

Vickroy founds his appeal on the contention that the water court has exclusive jurisdiction over water matters, including the requested change of point of diversion of the surface water right for Renner Ditch Number 1, and consequently that the Adams County District Court had no jurisdiction to issue the injunction. In the alternative, Vickroy contends that if the Adams County District Court has jurisdiction, its decree is void because it deprives Vickroy of his vested water right without due process of law contrary to the requirements of the United States and Colorado Constitutions. We conclude that neither of these contentions is meritorious.

## II.

A general description of systems established by the relevant statutes with respect to appropriation and administration of water will be of assistance in understanding the issues presented. Those statutes are the Colorado Ground Water Management Act, dealing with designated ground water, and the Water Right Determination and Administration Act of 1969, dealing with tributary waters which are "waters of the state."

## A.

The Colorado Ground Water Management Act (Management Act), sections 37–90–101 to 141, C.R.S.1973, was enacted in 1965 to establish a procedure for appropriation of designated ground water and for devoting it to beneficial use. It was designed to permit the full economic development of designated ground water resources. Section 37–90–102, C.R.S.1973; *Larrick v. North Kiowa-Bijou Management District,* 181 Colo. 395, 510 P.2d 323 (1973). Designated ground water, the definition of which is considered in more detail later, includes water not tributary to any stream, and other water not available for the fulfillment of decreed surface rights. Section 37–90–103(6), C.R.S.1973.

The Management Act creates a Ground Water Commission, (commission), section 37–90–104, C.R.S.1973, which has authority to determine designated ground water basins, section 37–90–106, C.R.S.1973. "Any person desiring to appropriate ground water for a beneficial use in a designated ground water basin shall make application to the commission . . ." which shall grant or deny a conditional permit on the basis of prescribed procedures and criteria. Section 37–90–107, C.R.S.1973. The state engineer is ex officio the executive director of the commission, section 37–90–104(6), C.R.S. 1973. He is empowered, among other things, "[t]o commence actions to enjoin the illegal opening or excavation of wells or withdrawal or use of water therefrom. . . ." Section 37–90–110(1)(e), C.R.S.1973.

The priority of claims for the appropriation of designated ground water is to be determined by the doctrine of prior appropriation, *see* sections 37–90–102, 109,

---

6. The appeal was docketed in the court of appeals and was later transferred here because it is a water case. *See* Section 13–4–102(1)(d), C.R.S.1973.

C.R.S.1973; *Colorado Ground Water Commission v. Dreiling,* 198 Colo. 560, 606 P.2d 836 (1980), as modified to permit full economic development of the designated ground water resources. *See* section 37–90–102, C.R.S.1973; *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978). The commission is charged with establishing priority dates for wells within designated ground water basins. Section 37–90–109, C.R.S.1973. It is also empowered to supervise and control the exercise and administration of all rights acquired to the use of designated ground water, including imposing limitations or prohibitions on withdrawal of water from wells as necessary to protect prior appropriators from unreasonable injury. Section 37–90–111, C.R.S.1973.

The Management Act also provides for formation of ground water management districts, with administrative and regulatory powers supplemental to and coordinated with those of the commission, within designated ground water basins. Sections 37–90–118 to 135, C.R.S.1973. Ground water management districts consult with the commission on all ground water matters affecting the districts and have authority to adopt controls, regulations or conservation measures, subject to approval by the commission, with respect to exercise of rights under final permits for the use of ground water within the district. Section 37–90–130(2), C.R.S.1973. The functions of the commission, the ground water management districts, and the state engineer under the Management Act are closely interrelated and require mutual consultation and cooperation.[7]

**B.**

The Water Right Determination and Administration Act of 1969, sections 37–92–101 to 602, C.R.S.1973 (the 1969 Act), provides the statutory framework for implementing the constitutional right to divert the unappropriated waters of any natural stream to beneficial uses. *See Colo.Const.* Art. XVI, §§ 5, 6. It is the last comprehensive legislative treatment in a succession of Colorado statutes on this subject. The 1969 Act establishes the position of water judge of the district courts of all counties situated entirely or partly within each of Colorado's seven water divisions. "Said district courts collectively acting through the water judge have exclusive jurisdiction of water matters within the division, ... Water matters shall include only those matters which this article and any other law shall specify to be heard by the water judge of the district courts." Section 37–92–203(1), C.R.S.1973. *See Larrick v. District Court,* 177 Colo. 237, 493 P.2d 647 (1972).

Among the water matters covered by the 1969 Act are applications for change of water rights, which include changes in points of diversion. Section 37–92–302(1), 103(5), C.R.S.1973.

**C.**

The Management Act and the 1969 Act create a conceptual framework which provides for appropriation and administration of designated ground water under the

7. For further description of the Management Act plan and for examples of the manner in which the Management Act has been implemented, *see generally Jackson v. State of Colorado,* 294 F.Supp. 1065 (D.Colo.1968); *Colorado Ground Water Commission v. Dreiling, supra; W–Y Ground Water Management District v. Goeglein,* 196 Colo. 230, 585 P.2d 910 (1978); *Cherokee Water District v. State,* 196 Colo. 192, 585 P.2d 586 (1978); *Kuiper v. Warren,* 195 Colo. 541, 580 P.2d 32 (1978); *Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978); *Thompson v. Colorado Ground Water Commission, supra; Kuiper v. Lundvall,* 187 Colo. 40, 529 P.2d 1328 (1974); *North Kiowa-Bijou Management District v. Ground Water Commission,* 180 Colo. 313, 505 P.2d 377 (1973); *Hayes v. State,* 178 Colo. 447, 498 P.2d 1119 (1972); *Fundingsland v. Colorado Ground Water Commission,* 171 Colo. 487, 468 P.2d 835 (1970). For valuable articles on the subject *see R. Moses and G. Vranesh, Colorado's New Ground Water Laws,* 38 *U.Colo.L. Rev.* 295 (1966). Note, *A Survey of Colorado Water Law,* 47 *Denver L. Journal* 226, 307 (1976); Comment, *Appropriation and Colorado's Ground Water: A Continuing Dilemma,* 40 *U.Colo.L.Rev.* 133 (1967); Current Developments, *Tributary Ground Water and Change-of-Place-of-Use Rules in Designated Ground Water Basins in Colorado,* 45 *U.Colo.L.Rev.* 229 (1973).

Management Act and appropriation and administration of all tributary water, except that which may be included in the definition of designated ground water, under the 1969 Act. *See Larrick v. North Kiowa-Bijou Management District, supra.* The Management Act relates solely to designated ground water, *Larrick v. District Court, supra;* the 1969 Act does not apply to designated ground water. *Id.* Three definitions in the 1969 Act, together with the utilization of the defined terms in the operative provisions of the 1969 Act, reflect this purpose. These definitions are as follows:

"'*Water Right*' means a right to use in accordance with its priority a certain portion of the *waters of the state* by reason of the appropriation of the same." Section 37–92–103(12), C.R.S.1973. (Emphasis added.)

"'*Waters of the State*' means all surface and *underground water* in or tributary to all natural streams within the State of Colorado, except waters referred to in section 37–90–103(6) [designated ground water]." Section 37–92–103(13), C.R.S. 1973. (Emphasis added.)

"'*Underground Water*' as applied in this article for the purpose of defining the waters of a natural stream, means that water in the unconsolidated alluvial aquifer of sand, gravel, and other sedimentary materials, and all other waters hydraulically connected thereto which can influence the rate or direction of movement of the water in that alluvial aquifer or natural stream. *Such 'underground water' is considered different from 'designated ground water' as defined in section 37–90–103(6).*" Section 37–92–103(11). (Emphasis added.)

■ Tracing through the relevant statutory provisions, it is *water matters* over which the water courts have exclusive jurisdiction. Section 37–92–203, C.R.S.1973. As relevant here, *water matters* include an application for change of a *water right.* Section 37–92–203, C.R.S.1973. But reference to the three definitions quoted above reflects that a *water right* definitionally does not include a right to use *designated*

*ground water,* as defined in section 37–90–103(6), C.R.S.1973. Furthermore, it is expressly provided in the 1969 Act that, except for the sections creating water divisions and providing for division engineers, the act shall not be applicable to "designated ground water basins as defined and established by article 90 of this title." Section 37–92–602(1)(a), C.R.S.1973.

■ The exclusion of designated ground water from water matters refers to that water which is the subject of the Management Act and is explained in the following two definitions in that act:

"'Underground water' and '*ground water*' are used interchangeably in this article and mean any water not visible on the surface of the ground under natural conditions."

"'*Designated ground water*' means that *ground water* which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding the date of the first hearing on the proposed designation of the basin, and which in both cases is within the geographic boundaries of a designated ground water basin." Section 37–90–103(19)(6). (Emphasis added.)

Applications for appropriation of designated ground water to beneficial use are committed to the jurisdiction of the commission. Section 37–90–107(1), C.R.S.1973.

**D.**

With the foregoing statutory framework as a background, we now turn to the facts of this case. The state engineer and the District sought to enjoin diversion of water which they allege to be designated ground water, by an action in the district court for the district within which the well is situated. In his motion to dismiss the complaint, however, Vickroy claims that the water sought to be diverted is not designated ground water but, implicitly, is "waters of

the state" as defined in section 37–92–103(13), C.R.S.1973, and that the litigation, therefore, involves a water matter committed to the exclusive jurisdiction of the water court. The jurisdictional issue hinges on this factual question, and the procedure by which the fact is to be determined is at the heart of the controversy here.

Vickroy contends that because the first litigation to present the issue was the application for a change of water right in the water court, the jurisdictional fact question should be resolved there. We do not agree.

 The land on which the well is situated is within the boundaries of a designated ground water basin. The creation of the designated ground water basin reflects the commission's conclusion that the quantity of ground water in the basin that would come within the definition of designated ground water upon determination of the basin pursuant to section 37–90–106, C.R.S. 1973, is sufficient to support such a determination.[8] We have previously indicated that the creation of a designated ground water basin does not establish conclusively that all ground water in the basin is designated ground water. *See Larrick v. District Court, supra.* Implicitly, we there ruled, and we here reaffirm, that after the creation of a designated ground water basin the proponent of the proposition that certain ground water within the basin is not designated ground water has the burden of proving that proposition. *Id.; see Larrick v. North Kiowa-Bijou Management District, supra; see also* Current Developments, *Tributary Ground Water and Change-of-Place-of-Use Rules in Designated Ground Water Basins in Colorado,* 45 U.Colo.L.Rev. 229, 232 n.25 (1973).

 As water courts have exclusive jurisdiction of water matters, section 37–92–203(1), C.R.S.1973, so are matters involving designated ground water committed exclusively to the administrative agencies and courts prescribed by the Management Act. This is not a case where two courts have concurrent jurisdiction, so that the court first acquiring jurisdiction should be permitted to proceed. *See Arakawa v. Cooperative Farmers Exchange,* 81 Colo. 92, 253 P. 830 (1927).[9] Ordinarily any court is competent to resolve a fact upon which its own jurisdiction depends. *Guthrie v. Barda,* 188 Colo. 124, 533 P.2d 487 (1975). It would be consistent with the approach taken in concurrent jurisdiction cases to permit the court in which a matter presenting such a jurisdictional fact question is first filed to resolve that question. However, in the context of a jurisdictional conflict between the commission and a water court, such a procedure would not be conducive to orderliness and would invite forum shopping and premature preemptive filing in an effort to obtain the forum perceived by a litigant to be the most advantageous.

 The commission has already made a determination that it was appropriate to include the site of Vickroy's well in a designated ground water basin. We note as well that the legislature has expressly specified that an application for an initial appropriation of ground water, even if not within the definition of designated ground water, in a designated ground water basin must be addressed to the commission. Section 37–90–107(1), C.R.S.1973. In *Sweetwater Development Corp. v. Schubert Ranches, Inc.,* 188 Colo. 379, 535 P.2d 215 (1975), we implicitly recognized that requirement by

8. There is no indication in the record whether Vickroy sought to have the boundaries drawn to exclude his land, as he might have done in the proceeding by which the basin was determined. *See* section 37–92–106(2), C.R.S.1973. Under similar circumstances we have termed arguments much like those made by Vickroy here as "an impermissible collateral attack on the decision of the commission to include the appellant's land within the boundaries of the [designated ground water] Basin". *Larrick v.*

*North Kiowa-Bijou Management District,* 181 Colo. at 406, 510 P.2d at 329. However, it is possible conceptually that "designated ground water" and "waters of the state" could coexist within a single geographic area. We have neither the occasion nor the hydrologic information to evaluate here whether waters within those definitionally distinct categories commonly coexist within the same area.

9. *But see* footnote 10, *infra.*

holding that a court may complete an adjudication proceeding involving a claim for a conditional water right within a designated ground water basin if the claim was filed prior to the designation and creation of the designated ground water basin and the proof shows that the applicant was entitled to a conditional decree prior to the time of designation and creation of the basin. We consider that it is appropriate as a matter of policy, and is consistent with legislative intent, to require that any relief sought which involves the taking of ground water in a designated ground water basin must be sought first through the administrative and judicial channels, as appropriate, prescribed for resolution of questions arising under the Management Act. We now so hold. Only if such proceedings result in a determination that a water matter is at issue can the jurisdiction of the water court be invoked.[10]

 Applying this principle to the case before us, as Vickroy's well is located in Adams County, the Adams County District Court was the appropriate forum to resolve the classification of the water to be taken by that well. *See* section 37–90–115, C.R.S.1973.[11] The plaintiff alleged it was designated ground water. Vickroy chose not to plead after his motion to dismiss had been denied, and the trial court properly accepted the allegation as true, *see* C.R.C.P. 8(d), and entered judgment on the pleadings for the plaintiffs.

### III.

Vickroy claims that the order of the Adams County District Court deprives him of a vested property right without due process of law contrary to *U.S.Const.* Amend. XIV and *Colo.Const.* Art. II, § 25. We find no merit in this contention.

 There is no question but that Vickroy's water right is a property right. *E. g., Green v. Chaffee Ditch Co.*, 150 Colo. 91, 371 P.2d 775 (1962); *Farmers Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 272 P.2d 629 (1954). An incident of that property right is the ability to change the point of diversion, if such change does not injuriously affect other appropriators. Section 37–92–305(3), C.R.S. 1973; *e. g., Green v. Chaffee Ditch Co., supra; Cline v. McDowell*, 132 Colo. 37, 284 P.2d 1056 (1955); *City of Colorado Springs v. Yust*, 126 Colo. 289, 249 P.2d 151 (1952). However, the source of supply of Vickroy's right is Kiowa Creek, a tributary of the South Platte River. He does not assert that his right to change his point of diversion extends to diversion from a different source, here nontributary water within a designated ground water basin.[12] To the extent that designated ground water within the Kiowa-Bijou designated ground water basin includes tributary water, and to the extent that Vickroy asserts a right to change his point of diversion to divert such tributary water, we conclude that the application procedures under the Management Act are broad and flexible enough to permit Vickroy to assert that right. *See Larrick v. North Kiowa-Bijou Management District, supra.* He has chosen thus far not to proceed under the Management Act. Unless and until he does so proceed we will not speculate without factual or legal context on the adequacy of the Management Act to assure protection of his rights. *Id.*

 The trial court's order in no way impairs Vickroy's right to divert water at

---

10. There may be situations which will involve a combination of designated ground water and waters of the state. *See* footnote 8, *supra.* We *do not* wish to suggest that in such a situation a procedure consistent with legislative intent could not be fashioned which would permit the matter to proceed in a single court. *See generally Oliver v. District Court*, 190 Colo. 524, 549 P.2d 770 (1976); *Perdue v. Ft. Lyon Canal Co.*, 184 Colo. 219, 519 P.2d 954 (1974). This potential problem should be considered in the context of the facts in which it may arise.

11. There is no dispute that if the water court is not the appropriate forum the Adams County District Court has jurisdiction.

12. Vickroy does not contend that he objected to the inclusion of the wellsite in the District boundaries as he could have done under section 37–90–106(2), C.R.S.1973, or that the procedures for asserting and determining such an objection are not fully adequate to satisfy due process requirements.

the original point of diversion pursuant to the 1922 decree for Renner Ditch Number 1. Vickroy's claim that this original decree establishes by res judicata that water at the proposed alternate point of diversion is "tributary" (*i. e.*, of a type subject to appropriation under the 1969 Act) is without merit, for that issue was not before the court in the proceedings which resulted in the original decree.

Finding no constitutional or other legal infirmity in the judgment of the trial court, we affirm that judgment.