William Q. JAEGER d/b/a Cornhusker Farms, Plaintiff–Appellant,

v.

COLORADO GROUND WATER COMMISSION, and Northern Trust Company, as Trustee Under the Will of Charles H. Krause, Anne Seyfried and Thelma Vonhazmburg; Lost Creek Ground Water Management District, for Itself and on Behalf of Richard Andrews; Daryl Arnold; Mr. and Mrs. Leslie M. Bartlett; Conrad Bauer; Rodney W. Baumgartner; Alan D. Berryman; Merl Dunham; Al Hofferber; Johnson Enterprises; Victor R. Klein; Blanch M. Preston; Ronald Schlagel; Catherin Schlagel; Abbott Farms, Inc.; Andreas Arnusch; Franz Arnusch; Hans Arnusch; Nikolaus Arnusch; Mr. and Mrs. William Asher; Charley Baumgartner; Dave Baumgartner; Earl Baumgartner; Leonard Baumgartner; Ruben Baumgartner; Terry E. Baumgartner; Frieda Becker; Harry E. Becker; Dayton G. Bell; Forrest M. Bell; William H. Bell; William C. Busch; George H. Busch; J.H. Casper; Rodney A. Cuykendall; Alfred R. Cuykendall; George Dalrymple; John E. Epple; Russell C. Epple; Elmer G. Foss; George G. Glenn; Maurice Gorges; Francis A. Gnadt; Marvin L. Helzer; Harold Huwa; Herman Huwa; Richard F. Huwa; Jim Ishida; James R. Jakel; Johnie Jakel; Dale A. Johnson; August Kitzman; Kauffman Bros.; Bruce Kauffman; Raymond Kauffman; Elmer Kauffman; E. Leonard Keller; Thomas J. Klausner; Edward H.D. Kotz; Glenn H. Lewton; Harold L. Lewton; John Mitzel; Richard Parker; John H. Reid; Ivan Robertson; Anna Robertson; Roggen Lions Club; Courtland Rybicka; Sargent Farms, Inc.; Clem J. Schrant; Joel Schoeneman; Gerald E. Sigg; Isabel Sirios; Donald L. Sloan; Paul Smith; Southeast Weld Soil Conservation District; Raymond Trupp; Donald H. Vogel; Jacob Vogel; Leo Mark Vrbas; Leo R. Vrbas; Homer H. Warren; Dennis Weichel; Edward N. Weickum; Edwin L. Weickum; Andy Zimbelman; Donald J. Zimbelman; Jack W. Zimbelman; John Zimbelman, Jr.; Kenneth L. Zimbelman; Ted Zimbelman; Leon Zimbelman, as Objectors, Defendants–Appellees.

No. 85SA287.

Supreme Court of Colorado, En Banc.

Nov. 9, 1987.

Rehearing Denied Dec. 21, 1987.

Saunders, Snyder, Ross & Dickson, P.C., Melvin B. Sabey, John M. Dickson, William B. Tourtillott, Jr., Denver, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Natural Resources Section, Denver, for defendant-appellee Colo. Ground Water Com'n.

Moses, Wittemyer, Harrison and Woodruff, P.C., Raphael J. Moses, David M. Brown, Veronica A. Perling, Boulder, Robert W. Giacomini, Sterling, for defendants-appellees other than Colo. Ground Water Com'n, Alan D. Berryman and Victor R. Klein.

Alan D. Berryman, pro se.

Victor R. Klein, pro se.

LOHR, Justice.

This is an appeal from a judgment of the Weld County District Court affirming a decision of the Colorado Ground Water Commission ("Commission") that denied six applications for conditional permits to appropriate ground water in the Lost Creek Designated Ground Water Basin. We agree with the district court that an intent to appropriate designated ground water for beneficial use, not for speculation, must be established before such an application can be granted, and that the Commission properly applied that standard in denying the applications. We therefore affirm the judgment.

I.

On December 12, 1978, William Q. Jaeger, d.b.a. Cornhusker Farms ("Cornhusker Farms" or "applicant"), filed eleven applications with the Commission for permits to construct wells, install pumps, and use ground water from the Lost Creek Designated Ground Water Basin in Weld County.

Five of the applications were later withdrawn by the applicant, and the six remaining applications were given a preliminary evaluation by the Commission, as required by section 37–90–107(2), 15 C.R.S. (1973). It appeared to the Commission that the applications could be given favorable consideration under existing policies, so public notice of the applications was provided by publication in the Keene Valley Sun. See §§ 37–90–107(2), –112(1), 15 C.R.S. (1973). Objections were filed, and hearings on the applications were held before a Commission hearing officer. See §§ 37–90–107(4), –113, 15 C.R.S. (1973).

On October 31, 1979, the hearing officer issued an Administrative Hearing Report, Findings, and Recommendations, which recommended to the Commission that the six applications be granted and that a system for monitoring the wells be required. The report included the following finding:

It is found that there is water to appropriate and that an appropriation in the amount of 6,600 acre-feet will not unreasonably impair existing water rights or create unreasonable waste.[1]

The hearing officer also found that "[t]he application for well permits clearly shows an intent by Cornhusker Farms to take the water and put it to beneficial use."

The Commission considered the hearing officer's recommendations at its regularly scheduled meeting on February 8, 1980, and voted 7–2 to deny the applications. Written decisions denying the six applications were issued by the Commission on March 5, 1980.

Cornhusker Farms filed a complaint seeking judicial review of the Commission's decisions by the Weld County District Court and also asking for other relief against the Commission and seven of its individual members.[2] The Commission's

---

1. The hearing officer also found that "there is 6,600 acre-feet [of water] available for annual appropriation that is now being lost to evaporation and evapotranspiration." The applicant proposes to lower the water table below the root zone of the phreatophytes, which are principally grasses, to eliminate these losses.

2. In its complaint, Cornhusker Farms named the Commission, the seven individual members who voted against the applications, and those persons and entities that objected to the granting of the applications. Cornhusker Farms alleged that the Commission and its members acted arbitrarily and in violation of statutory

decisions did not include "a statement of findings and conclusions upon all the material issues of fact, law, or discretion presented by the record," as required by section 24-4-105(14), 10 C.R.S. (1982). For this reason, the Commission filed a motion to remand the case to the Commission for further consideration and for the entry of decisions containing findings of fact and conclusions of law. The court then issued a remand order, upon stipulation of the parties, requiring the Commission to enter a decision based on the existing record and in compliance with section 24-4-105(14) and (15), 10 C.R.S. (1982).[3]

In accordance with the district court's order, the Commission issued its revised decision on November 19, 1982, in which it again denied the applications. In its findings of fact the Commission adopted the hearing officer's findings that "[t]here are 6,600 acre-feet of water available to appropriate annually and an annual appropriation of 6,600 acre-feet would not unreasonably impair existing water rights or create unreasonable waste."

The Commission also stated in its findings that William Q. Jaeger "testified, and the commission so finds, that the applicant hopes to sell the water in the future, but presently has no contractual commitment/s/ for the purchase of the water for a beneficial use." The Commission stated

as a conclusion of law that "[t]o initiate an appropriation of designated ground water, one must have an intent to appropriate. The right to appropriate is for beneficial use, not merely for profit." Applying the anti-speculation doctrine of *Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co.*, 197 Colo. 413, 594 P.2d 566 (1979), the Commission concluded that "[t]he evidence presented falls short of what is needed to indicate an intent to appropriate." The Commission also concluded that "[i]t is inconsistent with the policy of full economic development of the state's designated ground water resources ... to issue conditional permits for speculative future uses," and denied the permits.

Cornhusker Farms amended its original complaint and sought review of the Commission's decision in the Weld County District Court. The court determined that the Commission was correct in applying the *Vidler* doctrine to applications to appropriate ground water in designated ground water basins, and affirmed the Commission's decision. Cornhusker Farms then brought this appeal.

The central contention of Cornhusker Farms in this appeal is that the anti-speculation doctrine enunciated in *Vidler* is inapplicable to appropriations of ground water in designated ground water basins and that

authority, and abused their discretion. The applicant sought injunctive relief ordering the Commission to grant the permits, as well as monetary damages of $100,000 against the Commission and the defendant Commission members for each application that was denied. All claims against the individual commission members were later dismissed. In its amended complaint, Cornhusker Farms alleged that the Management Act was unconstitutional as applied and operated to take property rights in non-tributary water without due process of law. The complaint also alleged that the Commission abused its discretion in denying the applications, and sought $19,800,000 in damages against the Commission. Neither the complaint nor the amended complaint sought specific relief against the objectors, who participated both at the trial level and on appeal. On motion of Cornhusker Farms, the court later dismissed the claim for damages. The only issues presented on appeal are those discussed in this opinion.

3. Section 37-90-115, 15 C.R.S. (1979 Supp.), formerly governed appeals from actions of the

ground water commission. It was repealed and reenacted in June 1979 to provide:

Any party, including ground water management districts, adversely affected or aggrieved by any action of the ground water commission or the state engineer under the provisions of this article may obtain judicial review of such action pursuant to the provisions of § 24-4-106, C.R.S. 1973, except that venue shall lie in the county in which the water rights are located.

Ch. 348, sec. 7, § 37-90-115, 1979 Colo.Sess. Laws 1371, 1374. Section 24-4-106(6), 10 C.R.S. (1982), provides for judicial review on the agency record. At all times relevant to the present proceeding, § 37-90-115 was in effect in its above-quoted form. Section 37-90-115 was subsequently repealed and reenacted in 1983, and § 37-90-115(4), 15 C.R.S. (1986 Supp.), presently provides that judicial review of ground water commission actions shall be de novo.

the criteria by which applications for such appropriations are to be evaluated are limited to those set forth in section 37–90–107(3) and (4), 15 C.R.S. (1973). The Commission and the district court rejected this contention, and so do we.

## II.

The doctrine of prior appropriation with respect to water in or tributary to natural streams is firmly entrenched in Colorado law. It predates the Colorado Constitution, and "has existed from the date of the earliest appropriations of water within the boundaries of the state." *Coffin v. Left Hand Ditch Co.*, 6 Colo. 443, 446–47 (1882). A fundamental principle included within the doctrine is that a valid appropriation of water requires an intent to appropriate, i.e., "a fixed purpose to pursue diligently a certain course of action to take and beneficially use water from a particular source." *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d 730, 745 (Colo.1985). *Accord Water Supply & Storage Co. v. Curtis*, 733 P.2d 680, 683–84 (Colo.1987); *Fruitland Irrigation Co. v. Kruemling*, 62 Colo. 160, 165–67, 162 P. 161, 163 (1916).

This court discussed the need for a non-speculative appropriative intent in *Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co.*, 197 Colo. at 417–18, 594 P.2d at 568–69. In that case, the Colorado River Water Conservation District sought reversal of a conditional water storage decree granted to Vidler under the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, 15 C.R.S. (1973 & 1986 Supp.). The district argued that Vidler lacked the intent to appropriate, for although it planned to use the water to meet the future anticipated needs of municipalities and others, it. had no firm contractual commitment from any such entity for use of the water. This court agreed with the district:

> Our constitution guarantees a right to appropriate, not a right to speculate. The right to appropriate is for *use*, not merely for profit. As we read our con-

stitution and statutes, they give no one the right to preempt the development potential of water for the anticipated future use of *others* not in privity of contract, or in any agency relationship, with the developer regarding that use. To recognize conditional decrees grounded on no interest beyond a desire to obtain water for sale would—as a practical matter—discourage those who have need and use for the water from developing it. Moreover, such a rule would encourage those with vast monetary resources to monopolize, for personal profit rather than for beneficial use, whatever unappropriated water remains. Twenty-five years ago this Court emphatically rejected the "claim that mere speculators, not intending themselves to appropriate and carry water to a beneficial use or representing others so intending, can by survey, plat, and token construction compel subsequent bona fide appropriators to pay them tribute by purchasing their claims in order to acquire a right guaranteed them by our Constitution." *Denver v. Northern Colorado Water Dist.*, 130 Colo. 375, 408, 276 P.2d 992, 1009 (1954).

*Vidler*, 197 Colo. at 417, 594 P.2d at 568–69 (emphasis in original). *Accord, e.g., Water Supply & Storage Co. v. Curtis*, 733 P.2d at 683–84; *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d at 756–58; *Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.*, 646 P.2d 383, 387–90 (Colo.1982). After the *Vidler* decision, the legislature amended the definition of "appropriation" in the Water Right Determination and Administration Act of 1969 to recognize expressly that a valid appropriation cannot be initiated for speculative purposes. *See* § 37–92–103(3), 15 C.R.S. (1986 Supp.).

Relying on our decision in *Vidler*, the Commission concluded that since the evidence showed that Cornhusker Farms planned to sell the water in the future, and had no contractual commitments from any prospective beneficial users of the water, Cornhusker Farms lacked the requisite in-

tent to appropriate designated ground water for a beneficial use.[4]

### III.

Cornhusker Farms admits that it has no present beneficial user for the water, and would be developing the wells to export the water out of the designated basin. Therefore, if the *Vidler* non-speculation doctrine applies, the applications of Cornhusker Farms were properly denied. The applicant does not contest this, but instead takes the position that the *Vidler* doctrine is not applicable to appropriation of designated ground water. An evaluation of this contention requires consideration of the relationship between the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, 15 C.R.S. (1973 & 1986 Supp.) ("1969 Act"), and the Colorado Ground Water Management Act, §§ 37–90–101 to –141, 15 C.R.S. (1973 & 1986 Supp.) ("Management Act").

We considered the relationship between these two acts in detail in *State ex rel. Danielson v. Vickroy*, 627 P.2d 752 (Colo. 1981). We concluded:

> The Management Act and the 1969 Act create a conceptual framework which provides for appropriation and administration of designated ground water under the Management Act and appropriation and administration of all tributary water, except that which may be included in the definition of designated ground water, under the 1969 Act. The Management Act relates solely to designated ground water; the 1969 Act does not apply to designated ground water.

*Id.* at 757–58 (citations omitted).[5] *Vidler* involved only an appropriation of tributary water under the 1969 Act and did not consider the requirements for an appropriation of designated ground water under the Management Act. Cornhusker Farms is correct, therefore, to the extent that it asserts that *Vidler* does not control the present case. It remains to be considered, however, whether for other reasons the *Vidler* non-speculation doctrine is equally applicable to appropriation of designated ground water under the Management Act.

### A.

The Management Act regulates the appropriation and administration of designated ground water.[6] *State ex rel. Danielson v. Vickroy*, 627 P.2d 752, 756–58 (Colo. 1981). Designated ground water is made subject to the principles of the doctrine of prior appropriation by section 37–90–102(1), 15 C.R.S. (1986 Supp.):

> It is declared that the traditional policy of the state of Colorado, requiring the water resources of this state to be devoted to beneficial use in reasonable amounts through appropriation, is affirmed with respect to the designated ground waters of this state, as said waters are defined in section 37–90–103(6). While the doctrine of prior appropriation is recognized, such doctrine should be modified to permit the full economic development of designated ground water resources. Prior appropriations of ground water should be protected and

---

**4.** Beneficial use is defined in § 37–92–103(4), 15 C.R.S. (1973), as the "use of that amount of water that is reasonable and appropriate under reasonably efficient practices to accomplish without waste the purpose for which the appropriation is lawfully made...."

**5.** Section 37–92–602(1)(a), 15 C.R.S. (1973), with limited exceptions not applicable here, provides that the 1969 Act is not applicable to designated ground water basins.

**6.** Designated ground water, which is subject to the Management Act, is defined in § 37–90–103(6), 15 C.R.S. (1986 Supp.), as relevant here, as

> that ground water which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or

ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding the date of the first hearing on the proposed designation of the basin, and which in both cases is within the geographic boundaries of a designated ground water basin....

The 1969 Act, in contrast, applies to "waters of the state," which are defined as:

> all surface and underground water in or tributary to all natural streams within the state of Colorado, except waters referred to in section 37–90–103(6) [i.e., designated ground water].

§ 37–92–103(13), 15 C.R.S. (1973).

reasonable ground water pumping levels maintained, but not to include the maintenance of historical water levels. All designated ground waters in this state are therefore declared to be subject to appropriation in the manner defined in this article.

Cornhusker Farms emphasizes that although the doctrine of prior appropriation is incorporated into the Management Act, it is "modified to permit the full economic development of designated ground water resources." *Id.* The applicant contends that this means that all the elements of the appropriation doctrine required for appropriation from natural streams do not necessarily apply to designated ground water.

In *Danielson v. Kerbs Ag., Inc.,* 646 P.2d 363, 370 (1982), this court recognized that the legislature "modified" the appropriation doctrine as applied to designated ground water in order to accommodate the important differences between surface water and designated ground water. In that case we acknowledged the need for different policies to protect designated ground water since underground aquifers containing designated ground water are "not subject to the same ready recharge enjoyed by surface streams and tributary ground water," *id.* at 370, and we stated that:

> It is therefore apparent from section 37–90–102 that the principles underlying the doctrine of prior appropriation are applicable to a designated ground water basin, modified only by the policy against any unreasonable depletion of the aquifer in the basin.

*Id.* at 371.

In implementing the modified doctrine of prior appropriation, the Management Act creates a statutory permit system "intended to result in the issuance of a final permit to those appropriators who complete their appropriations in accordance with the statutory provisions." *Kuiper v. Warren,* 195 Colo. 541, 545, 580 P.2d 32, 35 (1978), *cert. denied,* 439 U.S. 984, 99 S.Ct. 575, 58 L.Ed.2d 656 (1978). Under this system, the traditional appropriation doctrine is modified to restrict appropriative rights to amounts that will prevent unreasonable

aquifer depletion. *See Colorado Ground Water Commission v. Dreiling,* 198 Colo. 560, 565–66, 606 P.2d 836, 839–40 (1980); *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 500–01, 575 P.2d 372, 381–82 (1978); *Fundingsland v. Colorado Ground Water Commission,* 171 Colo. 487, 496–97, 468 P.2d 835, 839 (1970). In none of our cases, however, have we suggested that the modified doctrine of prior appropriation applicable to designated ground water does not require an intent to appropriate for beneficial use rather than for speculation.

### B.

The Management Act provides that designated ground waters are subject to appropriation "in the manner defined in this article." § 37–90–102(1), 15 C.R.S. (1986 Supp.). Cornhusker Farms contends that by this language the legislature has declared that Article 90 alone prescribes the manner by which designated ground water may be appropriated. Therefore, the argument proceeds, Article 92 (the 1969 Act) and the cases construing it are not relevant to the case at hand, and only those elements of the appropriation doctrine specifically delineated in the Management Act apply to designated ground water.

Cornhusker Farms argues that section 37–90–107(4) establishes the three exclusive criteria to be applied by the Commission in deciding whether to grant an application to appropriate ground water in a designated ground water basin. That section states:

> (4) If objections have been filed within the time in said notice specified, the commission shall set a date for a hearing on the application and the objections thereto, and shall notify the applicants and the objectors of the time and place. Such hearing shall be held in the designated ground water basin and within the district, if one exists, in which the proposed well will be located. *If* after such hearing it appears that *there are no unappropriated waters in the designated source, or that the proposed appropriation would unreasonably impair exist-*

*ing water rights from such source, or would create unreasonable waste, the application shall be denied; otherwise it shall be granted* in accordance with subsection (3) of this section. The commission shall consider all evidence presented at the hearing and all other matters set forth in this section in determining whether the application should be denied or granted.

§ 37–90–107(4), 15 C.R.S. (1973) (emphasis added).[7] Cornhusker Farms contends that if the Commission finds that there is water available to appropriate, and the appropriation would not unreasonably impair existing water rights or create unreasonable waste, issuance of a conditional permit to appropriate is mandatory. Since the Commission made such findings in this case, the applicant argues that its applications must be granted. Cornhusker Farms asserts that the anti-speculation doctrine is not to be found among the requirements of section 37–90–107(4) and that there is no basis to impose it as an additional independent requirement.

Cornhusker Farms' argument ignores the familiar principle that statutes must be construed as a whole. *See, e.g., Colorado Dept. of Social Services v. Board of County Comm'rs,* 697 P.2d 1, 23 (Colo.1985); *Clark v. Fellin,* 126 Colo. 519, 524, 251 P.2d 940, 943 (1952) ("the whole statute must be read together and considered as a whole and its intent gathered from all of its provisions.") (citation omitted). The last sentence in subsection 37–90–107(4) states that "[t]he commission shall consider all evidence presented at the hearing and *all other matters set forth in this section* in determining whether the application should be denied or granted." (Emphasis added.) It is necessary, therefore, also to consider subsection 37–90–107(1), which provides that:

(1) *Any person desiring to appropriate ground water for a beneficial use* in a designated ground water basin shall make application to the commission in a form to be prescribed by the commission.

*The applicant shall specify* the particular designated ground water basin or subdivision thereof from which water is proposed to be appropriated, *the beneficial use to which it is proposed to apply such water,* the location of the proposed well, the name of the owner of the land on which such well will be located, the estimated average annual amount of water applied for in acre-feet, the estimated maximum pumping rate in gallons per minute, *and if the proposed use is irrigation, the description of the land to be irrigated and the name of the owner thereof,* together with such other reasonable information as the commission may designate on the form prescribed. *The amount of water applied for shall only be utilized on the land designated on the application.* The place of use shall not be changed without first obtaining authorization from the ground water commission.

(Emphasis added.)

Section 37–90–107, read in its entirety to include subsection (1) as well as subsection (4), incorporates the need for appropriative intent into the factors the Commission shall consider in evaluating a well permit application. *Cf. Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.,* 646 P.2d at 389 (anti-speculation doctrine is consistent with provision of 1969 Act requiring application for conditional water right decree to contain statement of use or proposed use of water). Section 37–90–107 must also be read in conjunction with section 37–90–102. This latter section affirms that the traditional Colorado policy that requires "the water resources of this state to be devoted to beneficial use in reasonable amounts through appropriation" is applicable to designated ground water. The provisions of the Management Act, read as a whole, are consistent with the requirement that an intent to appropriate water for a beneficial use is essential to an appropriation of designated ground water.

In addition, we think it significant that the Management Act repeatedly uses the

---

**7.** Section 37–90–107(4) was amended in 1979 in respects not relevant to the present case. As amended, it appears at § 37–90–107(4) (1986 Supp.).

term "appropriation," yet does not define that term. In *Danielson v. Kerbs Ag., Inc.*, 646 P.2d at 370–72, this court sought to determine what standards govern a change in place of use of designated ground water. We concluded that since the legislature used language in the Management Act substantially similar to the standards set forth in the 1969 Act, and "on the basis of the general policy of the surface water appropriation system inherent in section 37–90–102," *id.* at 372, the same legal standards as those used for change in place of use of surface water rights should apply to designated ground water. Applying the reasoning of *Kerbs*, we consider it appropriate and consistent with legislative intent to look to the standards of the 1969 Act for guidance in defining "appropriation." The definition of "appropriation" set forth in the 1969 Act expressly incorporates the anti-speculation doctrine applied in *Vidler*,[8] which was enunciated by this court twenty-five years earlier in *Denver v. Northern Colorado Water Dist.*, 130 Colo. at 408, 276 P.2d at 1009.

Cornhusker Farms argues that the anti-speculation doctrine should not apply to designated ground water because the legislature amended the 1969 Act to include the *Vidler* doctrine, but did not adopt a similar amendment to the Management Act. The applicant contends that if the legislature had wished the doctrine to apply to designated ground water it would have specifically incorporated an anti-speculation requirement into the Management Act. Realistically, however, the legislature's inaction tells us little. The matter simply may not have come to the legislature's attention because speculation was not perceived as a significant problem in designated basins.[9] To the extent that designated ground water is to be used for irrigation, the application to appropriate must designate the land to be irrigated, thereby necessitating an intent to appropriate for beneficial use, and the place of use cannot be changed without obtaining authorization from the Commission. *See* § 37–90–107(1), *W–Y Ground Water Management Dist. v. Goeglein*, 196 Colo. 230, 232, 585 P.2d 910, 911 (1978). In addition, it appears from the timing that in amending the 1969 Act, the legislature was simply attempting to codify or refine the anti-speculation doctrine affirmed in *Vidler*, which arose under the 1969 Act and did not involve water subject to the Management Act.

Cornhusker Farms argues further that the Management Act establishes a detailed two-step permitting system that precludes speculation in rights to designated ground water, with the result that reliance upon the *Vidler* doctrine is unnecessary. The first step of the process is obtaining a conditional permit, as provided in section 37–90–107. After receiving a conditional permit, an applicant has one year to con-

---

**8.** The anti-speculation doctrine is incorporated in § 37–92–103(3)(a), 15 C.R.S. (1986 Supp.), which provides that:

"Appropriation" means the application of a specified portion of the waters of the state to a beneficial use pursuant to the procedures prescribed by law; but no appropriation of water, either absolute or conditional, shall be held to occur when the proposed appropriation is based upon the speculative sale or transfer of the appropriative rights to persons not parties to the proposed appropriation, as evidenced by either of the following:

(I) The purported appropriator of record does not have either a legally vested interest or a reasonable expectation of procuring such interest in the lands or facilities to be served by such appropriation, unless such appropriator is a governmental agency or an agent in fact for the persons proposed to be benefited by such appropriation;

(II) The purported appropriator of record does not have a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water for specific beneficial uses.

. . . .

**9.** Cornhusker Farms contends that prior to this case there has not been a single instance in which the Colorado Ground Water Commission has even addressed the issue of appropriative intent in determining whether to grant an application. The applicant suggests that this demonstrates that the anti-speculation doctrine has never been part of the Management Act. As the State points out in its Answer Brief, however, Cornhusker Farms cannot "point to a single instance in which the commission knowingly issued a conditional well permit for speculative purposes.... This is simply a case of first impression." The fact that this issue has not been raised before lends support to the conclusion that speculation has not been a problem in the context of designated ground water.

struct the well, with the possibility of one six month extension for good cause, before the conditional permit expires. § 37–90–108(1)(a), (c), 15 C.R.S. (1986 Supp.). The second step of the permitting process is obtaining a final permit, as provided in section 37–90–108. After construction of the well, and within three years from the date of the issuance of the conditional permit, an applicant must furnish the Commission with evidence that water from the well has been put to beneficial use. § 37–90–108(2)(a), 15 C.R.S. (1986 Supp.). A final permit is granted only after the applicant has complied with the terms of the conditional permit and has demonstrated beneficial use. § 37–90–108(3), 15 C.R.S. (1986 Supp.).

The applicant contends that this system eliminates the evils that the *Vidler* doctrine is designed to prevent, i.e., obtaining conditional rights to waters of natural streams and tying up rights to those waters for years by successive showings of diligence without application to beneficial use. Cornhusker Farms also argues that granting the applications will further the Management Act's objective of encouraging full economic development of designated ground water. Cornhusker Farms contends that issuance of the permits will enable it to develop water that otherwise would be wasted, and will also enable it to reclaim land that is presently unusable, by lowering the water level.

Although the provisions of the Management Act limit speculation, they do not totally preclude it. Even under the permit system, an applicant who had no appropriative intent could tie up designated ground water for as long as three years without having to demonstrate a beneficial use. The same policy reasons described in *Vidler* for requiring one who applies for a conditional water right decree to demonstrate an appropriative intent apply to applications for conditional permits to appro-

priate in designated ground water basins. Promoting the maximum development of ground water resources does not require that designated ground water be excluded from the protections of the *Vidler* doctrine. In fact, the anti-speculation doctrine was developed to encourage full utilization of water resources by making water available to those with a genuine, immediate use for the water. The anti-speculation doctrine works to supplement the statutory permit system and to encourage the fullest use of designated ground water resources.

In summary, the arguments of the appellant that the anti-speculation doctrine is not applicable to this case are not persuasive.[10] The Commission was correct in applying the doctrine to designated ground water to prevent appropriation for speculative future uses. Cornhusker Farms did not possess the requisite intent to appropriate for a beneficial use, and the applications for conditional permits to appropriate were properly denied.

The judgment of the district court is affirmed.

---

**10.** The objectors in this case also note that the applicant's plan to develop the water involves lowering the water level below the root zone of the phreatophytes in the area to eliminate evapotranspirative losses. They argue that this plan requires denial of the well permits because *Southeastern Colorado Water Conservancy Dist. v. Shelton Farms, Inc.,* 187 Colo. 181, 529 P.2d 1321 (1974), prohibits the granting of such salvaged water claims. Cornhusker Farms contends that *Shelton Farms* is inapplicable to designated ground water basins. The trial court noted that the Commission had not addressed these issues and affirmed the order on other grounds. Similarly, our resolution of this case does not require us to reach these issues.