Reinaldo GALLEGOS, Marianne Gallegos, Harold L. Gallegos, Ellen Gallegos, and Gene J. Gallegos, Plaintiffs/Appellants/Cross–Appellees:

v.

COLORADO GROUND WATER COMMISSION, an administrative agency of the State of Colorado; and Harold D. Simpson, in his capacity as the Colorado State Engineer, as ex officio Executive Director of the Colorado Ground Water Commission, and as a non-voting member of the Colorado Ground Water Commission, Defendants/Appellees/Cross–Appellants:

and

William Anderson; Larry L. Croissant; Jean L. Croissant; Town of Grover, c/o Rick Hayes; Hereford Farms, LLC, c/o Jerry Burnett; Carl A. Johnson; Anita R. Johnson; Rod Johnson; James M. Konig; Janet F. Konig; Michael D. Ko-

nig; Larry Lang; Richard L. Pettinger; Lisa Pettinger; Rory Pettinger; Rocky Plains, LLP, c/o Phil Haynes; TR, Inc.; Tennick Land and Cattle Co., c/o Cristie Nicklas; BCK Heath Property, LLC, c/o Burton Kross; Clarence W. Tietmeyer; Vonda J. Tietmeyer; Clarence E. Tietmeyer; Scott W. Tietmeyer; Paula J. Tietmeyer; Vonda Jean Tietmeyer; and Tietmeyer Farms, Inc., Defendants/Appellees/Cross–Appellants:

and

Charles E. Nussbaum; Dorothy L. Nussbaum; James L. Karst; Judy Karst; Kenneth Everitt; Penny Everitt; Phil McKinley; Diane McKinley; Dan Loyd; Deerco, LLC; Jesse E. Loyd; Evelyn T. Loyd; Loyd Farms; Loyd Farms General Partnership; Lee A. Tappy; Fred D. Marrick; Roxanne L. Marrick; F & R Marrick; and Four Diamonds Ranch, LLC., Defendants/Appellees/Cross–Appellants:

and

Edna B. Anderson, Rosella Jessen, and Konig Investments LLC., Defendants/Appellees.

No. 05SA253.

Supreme Court of Colorado, En Banc.

Nov. 6, 2006.

As Modified on Denial of Rehearing Dec. 4, 2006.

Timothy R. Buchanan, P.C., Timothy R. Buchanan, Alan E. Curtis, Kara Godbehere Goodwin, Arvada, Colorado, Attorneys for Plaintiffs/Appellants/Cross–Appellees Reinaldo Gallegos, Marianne Gallegos, Harold L. Gallegos, Ellen Gallegos, and Gene J. Gallegos.

John Suthers, Attorney General, Patrick Kowaleski, First Assistant Attorney General, Alexandra L. Davis, Assistant Attorney General, Natural Resources and Environment Section, Denver, Colorado, Attorneys for Defendants/Appellees/Cross–Appellants Colorado Ground Water Commission and Harold D. Simpson as Colorado State Engineer.

Lind, Lawrence & Ottenhoff, LLP, Kim R. Lawrence, P. Andrew Jones, Bradley C. Grasmick, Windsor, Colorado, Attorneys for Defendants/Appellees/Cross–Appellants William Anderson; Larry L. Croissant; Jean L. Croissant; Town Of Grover, c/o Rick Hayes; Hereford Farms, LLC, c/o Jerry Burnett; Carl A. Johnson; Anita R. Johnson; Rod Johnson; James M. Konig; Janet F. Konig; Michael D. Konig; Larry Lang; Richard L. Pettinger; Lisa Pettinger; Rory Pettinger; Rocky Plains, LLP, c/o Phil Haynes; TR, Inc.; Tennick Land and Cattle Co., c/o Cristie Nicklas; BCK Heath Property, LLC, c/o Burton Kross; Clarence W. Tietmeyer; Vonda J. Tietmeyer; Clarence E. Tietmeyer; Scott W. Tietmeyer; Paula J. Tietmeyer; Vonda Jean Tietmeyer; and Tietmeyer Farms, Inc.; Konig Investments LLC.

Ken Copple, Fort Collins, Colorado, Attorney for Defendants/Appellees/Cross–Appellants Charles E. Nussbaum; Dorothy L. Nussbaum; James L. Karst; Judy Karst; Kenneth Everitt; Penny Everitt; Phil Mckinley; Diane McKinley; Dan Loyd; Deerco, LLC; Jesse E. Loyd; Evelyn T. Loyd; Loyd Farms; Loyd Farms General Partnership; Lee A. Tappy; Fred D. Marrick; Roxanne L. Marrick; F & R Marrick and Four Diamonds Ranch, LLC.

No appearance by or on behalf of Defendants/Appellees: Rosella J. Jenssen and Edna B. Anderson.

Holland & Hart, LLP, Anne J. Castle, Christopher L. Thorne, Denver, Colorado,

Attorneys for Amicus Curiae Five Rivers Ranch Cattle Feeding LLC.

Vranesh and Raisch, LLP, Michael D. Shimmin, Boulder, Colorado, Attorneys for Amicus Curiae Marks Butte, Frenchman, Sand Hills, Central Yuma, W–Y, Arikaree and Plains Ground Water Management Districts.

White & Jankowski, LLP, Sarah A. Klahn, Jason V. Turner, David C. Taussig, Denver, Colorado, Attorneys for Amicus Curiae Stulp Investment Co., LLC; John & Timothy Stulp, LLC and Timothy A. Stulp; Town of Genoa & Robert E. Boyd.

Justice RICE delivered the Opinion of the Court.

This case presents questions regarding the Colorado Ground Water Commission's jurisdiction over vested surface water rights within a designated ground water basin. We hold that the Commission has jurisdiction over surface water rights only for the purpose of altering the boundaries of a designated ground water basin. A surface water right holder who believes that pumping within a designated ground water basin is causing injury to those surface rights must prove to the Commission that the ground water alleged to cause the injury is hydrologically connected and causing injury to those rights. Upon such a showing, the Commission is statutorily required to alter the boundaries of the basin to exclude the surface water and the ground water shown to have been improperly designated. Once the boundaries are redrawn, jurisdiction vests in the State Engineer and the water courts to administrate and adjudicate the water rights according to prior appropriation.

## I. Facts and Procedural History

This appeal and cross-appeal stem from the District Court for Weld County's holding that (1) the Gallegos Family is not barred under either issue or claim preclusion from bringing their current claims, (2) the Colorado Ground Water Commission ("Commission") has jurisdiction over surface water rights where designated ground water withdrawals impact surface rights,[1] and (3) where such jurisdiction exists, the rights of the parties are governed by the Colorado Ground Water Management Act, sections 37–90–101 to –143, C.R.S. (2006) ("Management Act"), and the modified prior appropriation doctrine. We affirm in part, on different grounds, reverse in part, and remand.

The underlying dispute in this case concerns surface water rights held by the Plaintiffs/Appellants/Cross–Appellees Reinaldo Gallegos, Marianne Gallegos, Harold L. Gallegos, Ellen Gallegos, and Gene J. Gallegos ("Gallegos Family"). The Gallegos Family's surface water rights are located within the boundaries of the Upper Crow Creek Designated Ground Water Basin ("the Basin") in Weld County, Colorado. The Commission's hearing officer issued an initial decision creating the Basin on January 20, 1987, following public notice and a hearing, as required by the Management Act. The initial decision became the Order of the Commission on March 3, 1987. The designation was based upon the hearing officer's factual finding that "Upper Crow Creek is not a continuously flowing stream and that ground water withdrawals have constituted the principal water usage for at least fifteen years prior to October 30, 1986." It is undisputed that the Gallegos Family's surface water rights predate the designation of the Basin.

The Gallegos Family asserts that water diversions and well pumping within the Basin interfere with their senior surface water rights. Seeking relief from this interference, the Gallegos Family sent letters to Hal Simpson, the State Engineer, on November 12, 2002, and February 3, 2003, requesting that either the State Engineer or the Com-

---

1. One sentence in the district court's order states that the Commission has jurisdiction "where designated ground water withdrawals *unreasonably injure* surface water rights." (Emphasis added.) In other places, the district court states that the Commission's jurisdiction is triggered where designated ground water withdrawals "impact," "interact with," or "relate to" surface water rights. Reading the order as a whole, we interpret the district court's holding to be that the Commission's jurisdiction is invoked where designated ground water withdrawals impact surface water rights. Under the holding, so interpreted, a showing of unreasonable injury is not required to simply trigger the Commission's jurisdiction.

mission curtail the pumping of junior wells within the Basin as needed to fulfill the Gallegos Family's senior surface rights. In his capacity as Executive Director of the Commission, Mr. Simpson responded that there was no basis for ordering curtailment of the wells because the Commission took vested surface water rights into account when designating the Basin and, in addition, all the wells within the Basin were operating within the terms and conditions of their permits.

The Gallegos Family appealed Mr. Simpson's determination to the Commission. The hearing officer issued an Initial Decision and Order on June 23, 2003. The hearing officer determined as a matter of law that wells pumping water within the Basin withdraw designated ground water, reasoning that upon designation the nature of the ground water in the Basin legally changed and became subject to the Management Act and administration under modified prior appropriation. The hearing officer also reasoned that implicit in the Basin's designation was a determination by the Commission that withdrawals of the designated ground water have only a de minimis effect on surface waters.

Consequently, the hearing officer concluded that the Gallegos Family was barred by res judicata from calling out designated basin wells operating pursuant to permits. The hearing officer based this decision on the fact that the Gallegos Family's predecessor-in-interest had an opportunity during the designation hearings to object to the designation of the Basin and failed to do so; to the contrary, the Gallegos Family's predecessor-in-interest supported designation of the Basin. Finally, the hearing officer found as a matter of law that, while the Commission has exclusive jurisdiction over administering designated ground water, it has no jurisdiction over surface water rights. The Commission subsequently issued an Order affirming the hearing officer's initial decision.

The Gallegos Family appealed the Commission's Order to the District Court for Weld County. The Gallegos Family submitted to the district court a Motion for Determination of a Question of Law pursuant to C.R.C.P. 56(h), seeking three legal determinations:

(1) that the State of Colorado, acting by and through the Commission, is constitutionally required to regulate and administer junior wells within the Upper Crow Creek Designated Ground Water Basin to ensure that senior surface water rights within the Upper Crow Creek Designated Ground Water Basin receive water;

(2) that, as the only agency with authority to curtail junior designated ground water wells, the Commission is constitutionally required to regulate and administer the diversion of water by designated ground water wells within the Upper Crow Creek Designated Ground Water Basin that materially injure senior surface water rights within the Upper Crow Creek Designated Ground Water Basin; and

(3) that the Commission is without authority to authorize or allow diversions by junior designated wells withdrawing water from aquifers within the Upper Crow Creek Designated Ground Water Basin that result in the curtailment of diversions of water by senior surface water rights in the Upper Crow Creek Designated Ground Water Basin.

The district court first determined that the Gallegos Family's claims are not barred by either claim or issue preclusion.[2] The district court found that the Gallegos Family's claims present a question about the Commission's responsibility to administer the Basin, and that this question poses a different issue than whether to designate the Basin. Therefore, the district court held there was no preclusion. The district court did note, however, that the Gallegos Family would be precluded from challenging the designation of the Basin or from challenging the issuance of any particular well permit.

After dispensing with the preclusion issues, the district court denied the motion for

---

**2.** This Court uses the terms "claim preclusion" and "issue preclusion" instead of the terms "res judicata" and "collateral estoppel." *Argus Real* *Estate, Inc. v. E-470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005).

all three determinations of law because "[s]ubstantial questions of fact remain regarding whether [the Gallegos Family is] entitled to call out junior well appropriators . . . and because the Commission's curtailment authority is discretionary." Despite denying the motion, the district court held on its own initiative that the Commission erred in finding that it had no jurisdiction over surface water rights. The district court held that the Commission has jurisdiction over surface water rights when designated ground water withdrawals impact surface water rights. The district court further determined that when such jurisdiction exists the Commission must administer junior designated ground water wells for the benefit of senior surface water rights in accordance with the Management Act and the modified prior appropriation system. Finally, the district court stated that "senior water users may not employ an unreasonable method of diversion to the detriment of junior appropriators" and that "the futile call doctrine applies equally to designated ground water diversions as to any other diversions." The district court reversed the Commission's Order and remanded the case for further factual findings on the question of jurisdiction and, should jurisdiction be found to exist, the relief to which the Gallegos Family was entitled under the Management Act. This appeal and cross-appeal followed.

The Gallegos Family argues that the district court erred in concluding that their senior surface water rights are subject to modified prior appropriation, the unreasonable method of diversion doctrine, and the futile call doctrine.[3] Defendants/ Appellees/Cross–Appellants ("Defendants") argue on cross-appeal that the district court erred in holding that the Gallegos Family is not barred by claim or issue preclusion. The Defendants also appeal the district court's determination that the Commission has jurisdiction over surface water rights and a responsibility to administer junior designated ground water wells for the protection of senior surface water appropriators. To the extent such jurisdiction exists, however, Defendants urge this Court to affirm the district court's holding that administration is pursuant to the Management Act and the modified prior appropriation doctrine.

## II. Overview

This case raises important questions about whether interaction between designated ground water and surface waters is possible as a matter of law and, if such interaction is legally possible, how conflicts between owners of designated ground water rights and owners of surface water rights are to be resolved. The Gallegos Family seeks a determination that the Commission is required under both statute and the Colorado Constitution to administer designated ground water wells for the benefit of senior surface water right holders according to the prior appropriation doctrine, because surface rights are constitutional whereas designated ground water rights are statutorily created. In response, Defendants maintain that designated ground water only has a de minimis impact on surface water as a matter of law and therefore there is no legal basis for administration; furthermore, as the Commission held below, Defendants argue that the Commission has no jurisdiction over surface water rights. To the extent that the Commission is found to have jurisdiction, Defendants argue that the Commission is only required to administer designated ground water wells according to the modified prior appropriation doctrine. The Gallegos Family counters with the argument that if Defendants are correct, then under the Management Act the Commission can eliminate constitutionally protected rights through statutory designation; this result, the Gallegos Family claims, is constitutionally unacceptable.

Resolution of this case lies in an examination of the Commission's statutorily-granted jurisdiction. We agree with the district court that the Commission has limited jurisdiction over surface water rights, but we hold that such jurisdiction exists only for the purpose of redrawing the boundaries of a designated ground water basin, when appropriate. We therefore reverse the district court's de-

---

3. Given our resolution of this case, it is unnecessary to address the arguments concerning the unreasonable method of diversion and futile call doctrines.

termination that the Commission must administer junior designated ground water wells for the benefit of senior surface rights according to the Management Act and the modified prior appropriation doctrine. Finally, we affirm the district court's holding that the Gallegos Family is not barred by issue or claim preclusion, but on different grounds. A review of the Colorado Constitution and relevant statutes is necessary to an understanding of the resolution of this case, and we begin there.

### A. Prior Appropriation and the Colorado Constitution

As a semi-arid state, Colorado has always faced issues over how to allocate its limited water supply. Early in its history, Colorado implemented a system based upon putting previously unappropriated waters to beneficial use. *See,* James N. Corbridge, Jr., *Historical Water Use and the Protection of Vested Rights: A Challenge for Colorado Water Law,* 69 U. Colo. L.Rev. 503, 505 (Spring 1998). The first user to place previously unappropriated water to beneficial use enjoyed a vested water right in the beneficial use of that water, thus giving that senior appropriator priority in use over all subsequent (and therefore junior) appropriators. *Id.* In 1876, this system of vested water rights arising by virtue of prior appropriation was added to the state constitution: "The right to divert unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose. . . ." Colo. Const. art. XVI, § 6. The constitutional term "waters of any natural stream" includes both surface water and ground water that is tributary to surface water. *See, e.g., Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1147 (Colo.2001). This constitutional system is often referred to as "prior appropriation," and we use that term in this opinion.

In addition to the appropriation of surface streams, Colorado water users rely heavily on appropriations of ground water reserves.

Beginning in the 1940s, the amount of ground water appropriation dramatically increased. Conflicts between surface water users and ground water users became common, leading the General Assembly to pass comprehensive legislation in the 1960s. *Simpson v. Bijou Irr.,* 69 P.3d 50, 59 (Colo. 2003).

### B. Management Act

In 1965, the General Assembly enacted the Management Act to govern the use, appropriation, and administration of "designated ground water." § 37–90–102, C.R.S. (2006).[4] The Management Act created the Commission, an administrative body charged with designating ground water basins, issuing well permits within designated basins, and administering rights to designated ground water. §§ 37–90–104 to –111, C.R.S. (2006). The Management Act acknowledges the doctrine of prior appropriation, but specifically calls for a modified prior appropriation system to apply to designated ground water. § 37–90–102(1). Under the modified system, the Commission is charged with the task of permitting the full economic development of designated ground water resources, protecting prior appropriators of designated ground water, and allowing for reasonable depletion of the aquifer. *Id.; Upper Black Squirrel Creek Ground Water Mgmt. Dist. v. Goss,* 993 P.2d 1177, 1183–84 (Colo.2000). Although the rights of prior appropriators are to be protected under the Management Act, that protection does not extend to the maintenance of historic water levels. § 37–90–102(1). Consistent with this intent, the General Assembly made the Commission's powers to curtail the pumping of junior wells for the benefit of senior appropriators discretionary. *Goss,* 993 P.2d at 1188.

### C. 1969 Act

The Water Rights Determination and Administration Act ("1969 Act"), sections 37–92–101 to –602, C.R.S. (2006), "provides the statutory framework for implementing the constitutional right to divert the unappropriated waters of any natural stream to

---

4. We cite to the 2006 version of the Colorado Revised Statutes throughout this opinion. The statutory provisions upon which we rely have not been significantly modified.

beneficial uses." *State ex rel. Danielson v. Vickroy*, 627 P.2d 752, 757 (Colo.1981). The 1969 Act applies to all surface waters and all underground water tributary to natural streams. § 37–92–102(1)(a). The constitutional doctrine of prior appropriation governs the appropriation and use of the waters that are subject to the 1969 Act. *Id.* The 1969 Act created the current system of water divisions and water courts, and vested the State and Division Engineers with administrative duties. *Simpson*, 69 P.3d at 60. These duties include the non-discretionary duty to administer rights to waters subject to the 1969 Act according to the prior appropriation system. §§ 37–92–501 to –502; *Goss*, 993 P.2d at 1188.

By passing the 1969 Act, the General Assembly intended to "integrate the appropriation, use, and administration of underground water tributary to a stream with the use of surface water in such a way as to maximize the beneficial use of all of the waters of [Colorado]." § 37–92–102(1)(a). The General Assembly made clear, however, that designated ground water was not included in the "underground water" covered by the 1969 Act. § 37–92–103(11), (13); *Vickroy*, 627 P.2d at 758.

### III. Standard of Review

■ We review the district court's interpretation and application of statutes and case law de novo. *Simpson*, 69 P.3d at 58.

### IV. Analysis

#### A. Designated Ground Water

In order to reach a resolution of this case, it is necessary to examine the meaning of "designated ground water" and the implications of the Commission designating a basin. Although we find the Gallegos Family's position unpersuasive, their arguments stem from this Court's prior statements about the nature of designated ground water basins. We therefore take this opportunity to clarify our prior case law and the relevant statutes.

■ We proceed under the assumption, as we must, that the Management Act is constitutional. *See, e.g., Meyer v. Lamm*, 846 P.2d 862, 876 (Colo.1993) ("[W]e are guided by the principle that statutes must be construed in such manner as to avoid potential constitutional difficulties. The presumption of constitutionality accorded all statutes also assumes that the legislative body intends the statutes it adopts to be compatible with constitutional standards."). In interpreting the various provisions of both the Management Act and the 1969 Act, our primary purpose is to discern the intent of the General Assembly. *Simpson*, 69 P.3d at 59. When interpreting a number of interrelated statutory sections, we must give "consistent, harmonious, and sensible effect to the statutory scheme as a whole." *Id.*

■ Designated ground water is defined in section 37–90–103(6)(a) as:

[G]round water which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding the date of the first hearing on the proposed designation of the basin, and which in both cases is within the geographic boundaries of a designated ground water basin.

Based on this definition, we have previously noted that designated ground water "includes water *not tributary* to any stream, and other water *not available for the fulfillment of decreed surface rights.*" *Vickroy*, 627 P.2d at 756 (emphasis added). We have also observed that designated ground water falls into a category of ground water not part of the natural stream, and any use of this water has a "de minimus [sic] effect on any surface stream." *Goss*, 993 P.2d at 1182. These statements stand for the rule that designated ground water cannot, as a matter of law, impact surface flows by greater than a de minimis amount.

■ Furthermore, the Management Act defines "designated ground water basin" as "that area established by the ground water commission in accordance with section 37–90–106," the definition of designated ground water. § 37–90–103(7). Reading these definitions and our prior case law together leads

to the conclusion that all ground water contained within the geographic boundaries of a designated basin is to be considered designated ground water—i.e., ground water that has no more than a de minimis impact on any surface stream.

Our analysis cannot end there, however. Complicating our inquiry is the consistent observation by both this Court and water law commentators that a designated basin could contain both designated ground water, that ground water which has only a de minimis impact on surface flows and is administered under the Management Act, and ground water which is tributary to surface waters and is administered under the 1969 Act. *See* Veronica A. Sperling and David M. Brown, *Outline of Colorado Ground Water Law*, 1 U. Denv. Water L.Rev. 275, 278 (Summer 1998) ("Ground water that is either physically tributary to, or non-tributary to, surface streams can qualify for designation; designated ground water basins are essentially legal-political boundaries, and not necessarily coincident with hydrologic boundaries."). The primary cases where we suggested such a possibility were *State ex rel. Danielson v. Vickroy* and *Pioneer Irrigation Districts v. Danielson;* we therefore must examine those cases.

### 1. *State ex rel. Danielson v. Vickroy*

The first major case in which we dealt with the potential interaction of designated ground water and waters subject to the 1969 Act within a designated basin was *State ex rel. Danielson v. Vickroy*, 627 P.2d 752 (Colo. 1981). Vickroy owned a direct-flow water right with a point of diversion on Kiowa Creek, a tributary to the South Platte River. *Vickroy*, 627 P.2d at 755. Vickroy filed an application with the water court for a change in the point of diversion to a new well located within the boundaries of a designated ground water basin. *Id.* As a result the North Kiowa–Bijou Management District ("District") filed a statement of opposition to the application, claiming the water court lacked jurisdiction over the application. *Id.* The District and the State of Colorado ex rel. the State Engineer also filed a lawsuit against Vickroy in the Adams County District Court, averring that Vickroy's well was within the boundaries of the designated ground water basin and was pumping designated ground water without a permit. *Id.* The plaintiffs sought an injunction preventing Vickroy from pumping the designated ground water. *Id.* at 756. In his motion to dismiss, Vickroy argued that the water court had exclusive jurisdiction over his application for a change in his point of diversion and therefore the district court had no jurisdiction over the complaint. *Id.*

On appeal, we found that the jurisdictional issue hinged on the factual question of whether the ground water Vickroy sought to pump was designated ground water or ground water subject to the 1969 Act. *Vickroy*, 627 P.2d at 758–59. We stated that designation of a basin does not conclusively establish that all the ground water within the basin is designated ground water, *id.* at 759, but that the burden for proving "certain ground water within the [designated] basin is not designated ground water" lies with the proponent of that proposition. *Id.* We further held that any request to divert ground water located within a designated basin must first be brought in front of the Commission. *Id.* at 760. Jurisdiction switches to the water court only if it is demonstrated that the ground water at issue is subject to the 1969 Act. *Id.*

### 2. *Pioneer Irrigation Districts v. Danielson*

The next major case on this subject was *Pioneer Irrigation Districts v. Danielson*, 658 P.2d 842 (Colo.1983). Pioneer Irrigation owned surface rights on the North Fork of the Republican River, which was located within the Northern High Plains Designated Ground Water Basin. *Pioneer Irr.*, 658 P.2d at 844. Several years after designation of the Northern High Plains Basin, Pioneer Irrigation became concerned that pumping within the basin was affecting the Republican River's surface flow. *Id.* It therefore asked the State Engineer to shut down those wells it believed were interfering with its surface water rights; when the State Engineer failed to take action Pioneer Irrigation filed a lawsuit in the water court. *Id.* The water court

dismissed for lack of subject matter jurisdiction. *Id.*

We found that once again, the primary issue was whether Pioneer Irrigation was seeking to curtail wells pumping designated ground water or ground water subject to the 1969 Act. *Id.* at 846. Citing *Vickroy,* we held that the Commission must make this initial determination. *Id.; see also Ground Water Comm'n v. Shanks,* 658 P.2d 847, 848 (Colo. 1983) (explaining that both *Vickroy* and *Pioneer Irrigation Districts* held that the Commission has "initial and exclusive jurisdiction to determine if ground water diversions in a designated ground water basin involve the taking of designated ground water."). If the Commission found that only the pumping of designated ground water were involved, it had jurisdiction over the matter; if, however, the Commission found that the pumping of ground water subject to the 1969 Act were at issue, jurisdiction vested in the water court. *Pioneer Irr.,* 658 P.2d at 846.

## B. The Gallegos Family's Claims

This case raises difficulties not apparent in *Vickroy* and *Pioneer Irrigation Districts* because the Gallegos Family, unlike the plaintiffs in the previous cases, has never asserted that their injury is being caused by the pumping of ground water subject to the 1969 Act or that the water court has jurisdiction over the matter. Instead, the Gallegos Family has consistently maintained that only designated ground water is involved in this case, yet also has claimed that the "designated" ground water is tributary to their surface rights to greater than a de minimis extent.[5] Because they claim that only designated ground water is at issue, the Gallegos Family maintains that jurisdiction lies in the Commission. Based on the constitutional nature of their surface rights, the Gallegos Family insists that the Commission must administer the pumping of designated ground water wells for the benefit of their senior surface rights according to the prior appropriation doctrine codified in the 1969 Act.

The flaw in this position, however, is that we have repeatedly and consistently stated that the administration of waters under the 1969 Act is inapplicable to the Commission's administration of designated ground water under the Management Act. *Goss,* 993 P.2d at 1183 ("In sum, designated ground water priorities are administered under the [Management] Act, rather that the 1969 Act.") (citations omitted); *Pioneer Irr.,* 658 P.2d at 845 ("The Management Act, with the exception of sections 37–90–136 through 139, relates solely to designated ground water. All tributary waters, except that which may be included in the definition of designated ground water, are administered under the Water Right Determination and Administration Act of 1969.") (citations omitted); *Vickroy,* 627 P.2d at 758 ("The Management Act relates solely to designated ground water; the 1969 Act does not apply to designated ground water.") (citations omitted).

The need to keep the Management Act and the 1969 Act separate and distinct stems from the basic policy differences underlying the two statutes. *See, e.g., Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 215 (Colo.1996). As we have previously stated:

> We recognize the dissimilarity in the basic policies underlying the laws of this State for surface water and for ground water in designated basins. Prior appropriation rules for surface water were primarily designed and developed to protect the relative rights of senior and junior appropriators, in order to maximize the beneficial use of the surface water in this State.... In contrast, Colorado's permit system for regulation of the appropriation of water in designated ground water basins under the Act permits the full development of ground water sources while protecting against depletion of the underground aquifer, which is not subject to the same ready recharge enjoyed by surface streams and tributary ground water.

**5.** The Gallegos Family does not explicitly claim the designated ground water at issue is tributary. If it is true that the pumping of the designated ground water is depriving the family of their surface water rights, however, the water must necessarily be tributary to greater than a de minimis extent.

*Danielson v. Kerbs AG., Inc.,* 646 P.2d 363, 370 (Colo.1982). Accepting the Gallegos Family's position that designated ground water should be administered according to the prior appropriation system of the 1969 Act would confuse the two statutes and would frustrate legislative intent.

## C. The Commission's Jurisdiction

With this background in mind, we turn to the text of the Management Act to discern what the General Assembly intended for the Commission's jurisdiction to be. Section 37–90–106(1)(a) of the Management Act states that the Commission "shall, from time to time as adequate factual data becomes available, determine designated ground water basins and subdivisions thereof by geographic description and, *as future conditions require and factual data justify, shall alter the boundaries or description thereof.*" § 37–90–106(1)(a) (emphasis added). Notably, this provision was originally part of the Management Act. § 148–18–5, 9 C.R.S. (1963 & Perm. Cum.Supp.1965).[6] As this provision makes clear, the General Assembly anticipated that a designated ground water basin could include ground water that does not properly fall within the definition of designated ground water. When future conditions and factual data reveal this to be the case, the Management Act requires that the Commission redraw the boundaries of the designated basin. § 37–90–106(1)(a) ("shall alter the boundaries or description thereof") (emphasis added).

■ Based upon section 37–90–106(1)(a), we hold that the Commission has jurisdiction over surface water rights to the extent that a holder of those rights seeks changes to a designated basin's boundaries. The surface right holder, in order to receive relief, must prove that the pumping of then-designated ground water has more than a de minimis impact on their surface water rights and is

causing injury to those rights. Upon such a showing, the Management Act requires the Commission redraw the boundaries of the designated basin to exclude the surface water rights and those wells pumping designated ground water that has been proven to fall more properly within the definition of ground water subject to the 1969 Act. After the boundaries are redrawn, the State Engineer and the water courts regain jurisdiction and can administer the relative water rights under the 1969 Act. Of course, when an appropriator initiates a proceeding before the Commission claiming ground water has been improperly designated and seeking changes to the boundaries of the basin, the procedural requirements of section 37–90–106 must be followed.[7]

■ This holding clarifies *Vickroy* and *Pioneer Irrigation Districts.* As explained above, *Vickroy* noted that designation of a basin does not conclusively establish that all ground water within the basin is designated ground water. 627 P.2d at 759. *Vickroy* held that the burden for proving that ground water within a designated basin is not designated ground water lies with the proponent of that proposition. *Id.* Today's holding does not change this rule of law—a surface water right holder, such as the Gallegos Family, claiming injury caused by pumping within a designated ground water basin has the burden of proving that the ground water being pumped is hydrologically connected and causing injury to the surface water rights at issue. This is but another way of saying that the surface water right holder must prove the ground water alleged to cause injury is not designated ground water. We simply clarify what *Vickroy* left unstated—ground water which has more than a de minimis impact on surface waters cannot properly be classified as designated ground water.

---

**6.** The original section 37–90–106(1)(a) stated: "The commission shall, from time to time as adequate factual data becomes available, determine designated ground water basins and subdivisions thereof by *both geologic and geographic description,* and as future conditions require and factual data justify, shall alter the boundaries or description thereof." § 148–18–5, 9 C.R.S. (1963 & Perm. Cum.Supp.1965) (emphasis added).

We do not find the 1971 change from "by both geologic and geographic description" to "by geographic description" significant to today's holding.

**7.** These procedures include public notice and a hearing. § 37–90–106(3).

*Vickroy* and *Pioneer Irrigation Districts* further stand for the proposition that when the above factual showing is made, jurisdiction vests in the water court; if the necessary factual showing is not made, then only designated ground water is at issue and the Commission can dispose of the case. *Pioneer Irr.*, 658 P.2d at 846. We expand upon this rule by holding that, before jurisdiction vests in the water court, the Commission must redraw the boundaries of the basin to exclude the improperly designated ground water. Not only does the statute require this result, but our holding respects legislative intent by keeping designated ground water and ground water subject to the 1969 Act separate and distinct.

The Gallegos Family has not yet made a factual showing that ground water within the Basin is hydrologically connected and causing injury to their surface water rights. Instead, the Gallegos Family and the Commission jumped straight to the issue of what the relief would be if the asserted injury were true. On remand, the Gallegos Family must make this factual showing before the Commission is required to alter the Basin's boundaries.

## V. Claim and Issue Preclusion

We touch briefly on the Defendants' arguments that the Gallegos Family should be barred by claim and issue preclusion from seeking relief.

Claim preclusion prevents relitigation of claims that were or could have been litigated in a prior proceeding. *Argus Real Estate v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005). The doctrine of claim preclusion applies where four elements exist: (1) finality of the first judgment; (2) identity of subject matter; (3) identity of

claims for relief; and (4) identity or privity between parties to the actions. *Id.*

Unlike claim preclusion, issue preclusion only bars relitigation of issues actually litigated and decided in a prior proceeding. *Indus. Comm'n of the State of Colo. v. Moffat County Sch. Dist. Re No. 1*, 732 P.2d 616, 620 (Colo.1987). Issue preclusion is not limited to identical claims for relief but rather may apply to causes of action that are different from those raised in the original proceeding. *Id.* Issue preclusion bars relitigation of an issue when: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 667 (Colo.2006).

The doctrines of claim and issue preclusion apply to administrative actions as well as judicial proceedings. *Moffat County Sch. Dist.*, 732 P.2d at 620. "The findings and conclusions of an administrative agency may be binding upon the parties in a subsequent proceeding if the agency that rendered the decision acted in a judicial capacity and resolved disputed issues of fact which the parties had an adequate opportunity to litigate." *Id.* If it were not for the fact that the General Assembly has specifically called for the boundaries of designated basins to be revisited, we might agree that the Gallegos Family is barred from seeking relief.[8] The Gallegos Family's predecessor-in-interest had notice of and participated in the original

---

8. Indeed, we have previously stated that arguments similar to those raised by the Gallegos Family are "an impermissible collateral attack on the decision of the commission to include the appellant's land within the boundaries of the (designated ground water) Basin." *Vickroy*, 627 P.2d at 759 n. 8 (citing *Larrick v. N. Kiowa Bijou Mgmt. Dist.*, 181 Colo. 395, 406, 510 P.2d 323, 329 (1973)).

We have also previously observed that there "[o]bviously ... must be some 'cut-off' time

when water within a designated ground water basin can no longer be adjudicated in our courts as water that is not so designated." *Sweetwater Dev. Corp. v. Schubert Ranches, Inc.*, 188 Colo. 379, 384, 535 P.2d 215, 218 (1975). Nonetheless, the plain language of the statute requires that no hard "cut-off" exist if "future conditions require and factual data justify" altering a designated ground water basin's boundaries. § 37–90–106(1)(a).

designation hearing. The Gallegos Family is in privity with their predecessor-in-interest and is therefore bound by the designation order.

Despite the fact that claim and issue preclusion might otherwise apply, the Gallegos Family must have the opportunity to prove that "future conditions require and factual data justify modification of the Basin's boundaries under the Management Act. We stress, however, that the Gallegos Family's petition for modifying the Basin's boundaries must fail if they are unable to present evidence on connectivity and injury other than that which was before the Commission when the Basin was originally designated.

## VI. Conclusion

We hold that the Commission has jurisdiction over surface water rights located within a designated ground water basin for the purpose of redrawing the basin's boundaries. A surface water right owner who believes that the pumping of designated ground water injures its rights must prove to the Commission that the water alleged to cause the injury has been improperly designated. Upon such a showing, the Commission is required to alter the basin's boundaries to exclude the surface rights and the improperly designated ground water. Once the ground water is no longer designated, jurisdiction will vest in the State Engineer and the water courts for administration under the 1969 Act according to prior appropriation. We further hold that the Gallegos Family is not barred under either claim or issue preclusion from making this factual showing, assuming the Gallegos Family presents to the Commission evidence on connectivity and injury other than that which was before the Commission when the Basin was originally designated. We therefore affirm in part, reverse in part, and remand this case for proceedings consistent with this opinion.

Justice EID does not participate.