Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 21, 2018

**2018 CO 38**

**No. 17SA5, Jim Hutton Educ. Found. v. Rein—Water Law—Jurisdiction.**

In this case, the Jim Hutton Educational Foundation, a surface-water user, claimed that a statute prohibiting any challenge to a designated groundwater basin that would alter the basin's boundaries to exclude a permitted well is unconstitutional. The water court dismissed that claim for lack of subject matter jurisdiction, concluding that the surface-water user had to first satisfy the Colorado Groundwater Commission that the water at issue was not designated groundwater. The supreme court affirms, concluding that, because jurisdiction vests in the water court only if the Colorado Groundwater Commission first concludes that the water at issue is designated groundwater, the water court properly dismissed the constitutional claim for lack of subject matter jurisdiction.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 38

### Supreme Court Case No. 17SA5

*Appeal from the District Court*

Weld County District Court, Water Division 1, Case No. 15CW3018

Honorable James F. Hartmann, Water Judge

### Plaintiff-Appellant:

The Jim Hutton Educational Foundation, a Colorado non-profit corporation,

v.

### Defendants-Appellees:

Kevin Rein, in his capacity as the Colorado State Engineer; David Nettles, in his capacity as Division Engineer in and for Water Division No. 1, State of Colorado; Colorado Division of Water Resources; and Colorado Division of Parks and Wildlife,

and

### Defendants-Intervenors-Appellees:

Yuma County Water Authority Public Improvement District; Colorado Ground Water Commission; and Marks Butte, East Cheyenne, Frenchman, Sandhills, Central Yuma, Plains, W-Y, and Arikaree Ground Water Management Districts,

and

### Defendants-Well Owners-Appellees:

Republican River Water Conservation District; City of Wray; City of Holyoke; Harvey Colglazier; Lazier, Inc.; Marjorie Colglazier Trust; Mariane U. Ortner; Timothy E. Ortner; Protect Our Local Community's Water, LLC; Saving Our Local Economy, LLC; the "North Well Owners"; Tri-State Generation and Transmission Association, Inc.; Dirks Farms Ltd; Julie Dirks; David L. Dirks; Don Andrews; Myrna Andrews; Nathan Andrews; Happy Creek, Inc.; J&D Cattle, LLC; 4M Feeders, Inc.; May Brothers, Inc.; May Family Farms; 4M Feeders, LLC; May Acres, Inc.; Thomas R. May; James J. May; Steven D. Kramer; Kent E. Ficken; Carlyle James as Trustee of the Chester James Trust; Colorado Agriculture Preservation Association; Colorado State Board of Land Commissioners; and the City of Burlington.

**Judgment Affirmed**

*en banc*

May 21, 2018

**Attorneys for Plaintiff-Appellant The Jim Hutton Educational Foundation, a Colorado non-profit corporation:**
Porzak Browning & Bushong LLP
Steven J. Bushong
Karen L. Henderson
    *Boulder, Colorado*


**Attorneys for Defendant-Intervenor-Appellee Yuma County Water Authority Public Improvement District:**
Brownstein Hyatt Farber and Schreck, LLP
Steven O. Sims
John A. Helfrich
Dulcinea Z. Hanuschak
    *Denver, Colorado*


**Attorneys for Defendant-Intervenor-Appellee Colorado Ground Water Commission:**
Cynthia H. Coffman, Attorney General
Chad M. Wallace, Senior Assistant Attorney General
Patrick E. Kowaleski, Senior Assistant Attorney General
    *Denver, Colorado*


**Attorneys for Defendants-Intervenors-Appellees Marks Butte, Frenchman, Sandhills, Central Yuma, Plains, and Arikaree Ground Water Management Districts:**
Vranesh and Raisch, LLP
Eugene J. Riordan
Leila C. Behnampour
    *Boulder, Colorado*


**Attorneys for Defendant-Well Owner-Appellee Republican River Water Conservation District:**
Hill & Robbins, P.C.
David W. Robbins
Peter J. Ampe
    *Denver, Colorado*


**Attorneys for Defendant-Well Owner-Appellee "North Well Owners":**
Cline Williams Wright Johnson & Oldfather, L.L.P.
Russell J. Sprague
Kimbra L. Killin

*Fort Collins, Colorado*

**Attorneys for Defendant-Well Owner-Appellee Tri-State Generation and Transmission Association, Inc.:**
Vranesh and Raisch, LLP
Aaron S. Ladd
Justine C. Beckstrom
 *Boulder, Colorado*

Tri-State Generation and Transmission Association, Inc.
Roger T. Williams
 *Westminster, Colorado*

**Attorneys for Defendants-Well Owners-Appellees Don Andrews, Myrna Andrews, and Nathan Andrews:**
Vranesh and Raisch, LLP
Stuart B. Corbridge
Geoffrey M. Williamson
 *Boulder, Colorado*

**Attorneys for Defendants-Well Owners-Appellees Happy Creek, Inc.; J&D Cattle, LLC; 4M Feeders, Inc.; May Brothers, Inc.; May Family Farms; 4M Feeders, LLC; May Acres, Inc.; Thomas R. May; and James J. May:**
Carlson, Hammond, and Paddock, LLC
William A. Paddock
Johanna Hamburger
 *Denver, Colorado*

**Attorneys for Defendant-Well Owner-Appellee Colorado Agriculture Preservation Association:**
Lawrence Jones Custer Grasmick LLP
Bradley C. Grasmick
Curran A. Trick
 *Johnstown, Colorado*

**Attorneys for Defendant-Well Owner-Appellee Colorado State Board of Land Commissioners:**
Cynthia H. Coffman, Attorney General
Virginia Sciabbarrasi, Assistant Attorney General
 *Denver, Colorado*

**Attorneys for Defendant-Well Owner-Appellee City of Burlington:**
Burns, Figa & Will, P.C.
Stephen H. Leonhardt

Michael Y. Ley
   *Greenwood Village, Colorado*

No appearance by or on behalf of Kevin Rein; David Nettles; Colorado Division of Water Resources; Colorado Division of Parks and Wildlife; East Cheyenne and W-Y Ground Water Management Districts; City of Wray; City of Holyoke; Harvey Colglazier; Lazier, Inc.; Marjorie Colglazier Trust; Mariane U. Ortner; Timothy E. Ortner; Protect Our Local Community's Water, LLC; Saving Our Local Economy, LLC; Dirks Farms Ltd; Julie Dirks; David L. Dirks; Steven D. Kramer; Kent E. Ficken; or Carlyle James as Trustee of the Chester James Trust.

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

4

¶1 The Jim Hutton Foundation ("Foundation") owns surface-water rights in the Republican River Basin. It believes that permitted groundwater wells that people have begun to install in the underlying groundwater basin—the Northern High Plains Basin ("NHP Basin")—are not in fact pumping designated groundwater, and are therefore injuring its senior surface-water rights. So the Foundation seeks legal redress, hoping to ultimately alter the groundwater basin's boundaries to exclude any improperly permitted designated-groundwater wells.

¶2 Our precedent provides that, to resolve such a dispute, the Colorado Groundwater Commission ("Commission") must first determine whether the water at issue is in fact designated groundwater. A recent legislative amendment to the statutory process to challenge the designation of a groundwater basin, however, prohibits any challenge that would alter a designated groundwater basin's boundaries to exclude a well that has already received a permit.

¶3 So instead, the Foundation filed this action in water court, arguing that the legislative amendment is unconstitutional as applied. Specifically, the Foundation claims that the amendment deprives surface-water users of the ability to petition the Commission to redraw the NHP Basin's boundaries to exclude permitted well users upon a showing that groundwater was improperly designated when the NHP Basin's designation became final. The water court dismissed this claim for lack of subject matter jurisdiction. It concluded that the Commission must first determine whether the water at issue is designated groundwater before subject matter jurisdiction will vest in

5

the water court, meaning the Foundation's constitutional claim cannot become ripe until it satisfies the Commission that the water is not designated groundwater.

¶4 The Foundation appealed. We now affirm the water court and conclude that, because jurisdiction does not vest in the water court until the Commission first determines that the water at issue is not designated groundwater, the water court properly dismissed the claim.

## I. Facts and Procedural History

¶5 The Foundation owns a ranch in Yuma County, Colorado, near the South Fork of the Republican River. It also owns four decreed water rights to divert surface water from the South Fork to irrigate the ranch. The Foundation leases its land and water rights to generate revenue. Recently, however, revenue from the water leases has decreased, and we must review some water-law history to explain why.

¶6 In 1942, the General Assembly ratified the Republican River Compact ("Compact"), which equitably divided the waters of the Republican River Basin between the states of Colorado, Kansas, and Nebraska. Ch. 123, sec. 1, 1943 Colo. Sess. Laws 362, 362–63.[1] Under Article IV of the Compact, Colorado is allotted a total of 54,100 acre-feet of water annually from four sources, one being the South Fork of the Republican River. § 37-67-101, C.R.S. (2017).

¶7 Twenty-two years after the General Assembly ratified the Compact, it enacted the Colorado Ground Water Management Act ("Management Act") with the intent to

---

[1] The United States Congress consented to the Republican River Compact in 1943, thereby bringing it into effect. Act of May 26, 1943, Pub. L. No. 78-60, ch. 104, 57 Stat. 86.

develop Colorado's groundwater resources.  Ch. 319, sec. 1, § 148-18-1, 1965 Colo. Sess. Laws 1246 (codified at §§ 37-90-101 to -143, C.R.S. (2017)).[2]  To that end, the Management Act created the Commission, which both establishes and administers the procedures for groundwater permitting and use, §§ 37-90-107 to -114, C.R.S. (2017), and also determines designated groundwater basins, § 37-90-106(1)(a), C.R.S. (2017). "Designated groundwater," as defined in the Management Act, is "groundwater which in its natural course would not be available to and required for the fulfillment of decreed surface rights."  § 37-90-103(6)(a), C.R.S. (2017).

¶8      Pursuant to its statutory authority to designate groundwater basins, the Commission issued an order designating the NHP Basin in 1966.  In the order, the Commission found that six water-bearing geological formations, including the Ogallala-Alluvium formation, existed within the proposed boundaries of the NHP Basin.  Water in the Ogallala-Alluvium formation, the Commission concluded, is groundwater that in its natural course would not be available to and required for the fulfillment of decreed surface rights, and is therefore designated groundwater under the Management Act. Having made these and other findings and conclusions—such as that surface-water rights within the NHP Basin are governed by the Compact and surface-water law—the Commission established the NHP Basin boundaries to correspond with those of the six underlying geological formations.

---

[2] The Management Act was originally codified in article 18 of chapter 148, but it is now codified in article 90 of chapter 37.

¶9 These boundaries also correspond with the Republican River Basin and its tributaries, including the South Fork. Around the time the General Assembly ratified the Compact, there were few irrigation wells in the Republican River Basin. But after the General Assembly enacted the Management Act, water users began to install wells in the NHP Basin, and the surface flows in the South Fork began to decline. In response to declining surface flows, and to ensure that Colorado does not exceed its annual water allotment under the Compact, the Colorado State Engineer curtailed surface-water use in the Republican River Basin. This curtailment affected the Foundation's surface-water rights, which predate the Compact. Yet the State Engineer imposed no similar restrictions on groundwater-rights holders.

¶10 The Foundation sought redress in the courts but faced a problem: The General Assembly had, in the Foundation's view, restricted surface-water users' ability to challenge designated groundwater basins in 2010. Prior to that year, the Management Act provided that boundaries of a designated groundwater basin could be altered, after initial designation, "as future conditions require[d] and factual data justif[ied]." § 37-90-106(1)(a), C.R.S. (2009). In Gallegos v. Colorado Ground Water Commission, 147 P.3d 20, 31 (Colo. 2006), we interpreted that provision to reveal the General Assembly's anticipation "that a designated ground water basin could include ground water that does not properly fall within the definition of designated ground water." Where that is the case, we noted, "the Management Act requires that the Commission redraw the boundaries of the designated basin." Id. To obtain that relief, water-rights holders who claimed that their rights were injured had to prove to the Commission

8

"that the pumping of then-designated ground water has more than a de minimis impact on their surface water rights and is causing injury to those rights." Id.

¶11 But in 2010, the General Assembly amended the provision that we had interpreted in Gallegos by enacting Senate Bill 10-52 ("S.B. 52"). Ch. 63, sec. 1, § 37-90-106, 2010 Colo. Sess. Laws 223. S.B. 52 says that, once finalized, a designated groundwater basin may not be altered to exclude any well for which a permit to use designated groundwater has been issued:

> After a determination of a designated groundwater basin becomes final, the commission may alter the boundaries to exclude lands from that basin only if factual data justify the alteration and the alteration would not exclude from the designated groundwater basin any well for which a conditional or final permit to use designated groundwater has been issued.

§ 37-90-106(1)(a), C.R.S. (2017). The General Assembly explained that this amendment merely reaffirmed the legislature's "original intent that there be a cut-off date beyond which the legal status of groundwater included in a designated groundwater basin cannot be challenged, and that such cut-off date was intended to be the date of finality for the original designation of the basin." Id. After that cut-off date, any request to exclude permitted wells from an existing groundwater basin shall be "an impermissible collateral attack" on the original designation. Id.

¶12 Turning to the case at hand, the Foundation believed that S.B. 52 precluded it from seeking relief from the Commission, so the Foundation filed this action instead in water court. Its complaint asserts three claims for declaratory relief against the State Engineer, the Colorado Department of Natural Resources, and the Division of Water

9

Resources (collectively, "Defendants"), alleging that they have unlawfully administered the Republican River Basin. The Foundation's first claim alleges that Defendants' administration of water in the Republican River Basin—namely, their actions to restrict surface-water use—is unlawful. Its second claim alleges that S.B. 52 is unconstitutional as applied to the NHP Basin, as it deprives surface-water users of the ability to petition the Commission to redraw the NHP Basin boundaries to exclude permitted well users upon a showing that groundwater was improperly designated when the NHP Basin's designation became final. And its third claim alleges that the Management Act is unconstitutional if it (1) prevents Defendants from administering designated groundwater to satisfy Colorado's obligations under the Compact, or (2) prevents the Commission from redrawing the boundaries of a designated basin to exclude wells that interfere with those obligations.

¶13 The Commission intervened and then moved to dismiss the second and third claims for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). The water court granted the motion, dismissing the second claim and part of the third. The second claim, the water court concluded, alleged only a speculative injury and was therefore not ripe for review. In reaching this conclusion, the water court first noted that the General Assembly, through the Water Right Determination and Administration Act of 1969 ("1969 Act"), ch. 373, 1969 Colo. Sess. Laws 1200 (codified as amended at §§ 37-92-101 to -602, C.R.S. (2017)), vested in every water court exclusive jurisdiction over water matters within its division. § 37-92-203(1), C.R.S. (2017). Yet the 1969 Act excluded from its purview designated groundwater. See § 37-92-103(13). The

administration of designated groundwater, the water court noted, was instead assigned to the Commission under the Management Act. § 37-90-111(1)(a), C.R.S. (2017). Recognizing these separate bodies, and acknowledging our precedent treating them as having distinct subject matter jurisdiction, e.g., Meridian Serv. Metro. Dist. v. Ground Water Comm'n, 2015 CO 64, ¶¶ 16–18, 361 P.3d 392, 395–96, the water court concluded that it lacked jurisdiction until the Commission determined that the water is not designated groundwater.

¶14    The water court then turned to whether the Foundation had first gone to the Commission for that determination, thereby making its constitutional challenges ripe. It noted that, in Gallegos, we held that in order to receive relief from the Commission, the plaintiffs must first make "a factual showing that ground water within the [designated groundwater basin] is hydrologically connected and causing injury to [the plaintiffs'] surface water rights." 147 P.3d at 32. Thus, we stated that it was improper for the plaintiffs and the Commission to have "jumped straight to the issue of what the relief would be if the asserted injury were true." Id. Applying this holding, the water court here concluded that the Foundation's constitutional argument—which predated any factual showing to the Commission that permitted well users were not drawing designated groundwater and thus were injuring the Foundation's water rights—was not ripe for its review.

¶15    Having reached that conclusion, the water court dismissed the Foundation's second claim for lack of subject matter jurisdiction. It also dismissed a portion of the Foundation's third claim. The Foundation then moved to certify the order dismissing

11

its second claim as a final judgment under C.R.C.P. 54(b), and the water court granted that motion. We now review that sole certified issue: Whether the water court properly granted the Commission's motion to dismiss the Foundation's second claim for lack of subject matter jurisdiction.

## II. Analysis

¶16     To answer that question, we first identify the standard of review. We then summarize the statutory framework that vests jurisdiction in the Commission and the water courts to entertain different types of water disputes, and our precedent interpreting that framework. Finally, we consider the Foundation's second claim in light of that statutory framework, and we conclude that the water court properly granted the Commission's motion to dismiss for lack of subject matter jurisdiction.

### A. Standard of Review

¶17     A motion to dismiss under C.R.C.P. 12(b)(1) challenges a court's subject matter jurisdiction. Tulips Invs., LLC v. State ex rel. Suthers, 2015 CO 1, ¶ 11, 340 P.3d 1126, 1131. Where, as here, such a jurisdictional challenge involves no disputed facts, we review the determination of a court's subject matter jurisdiction de novo. Id. In so doing, we keep in mind that the plaintiff bears the burden of proving jurisdiction. Cash Advance & Preferred Cash Loans v. State ex rel. Suthers, 242 P.3d 1099, 1113 (Colo. 2010).

### B. Law

¶18     To determine whether the Foundation has met that burden, we must look to the statutory authority of the Commission and the water courts, as well as our precedent

12

interpreting that authority. The General Assembly enacted the Management Act to develop Colorado's groundwater resources. § 37-90-102(1), C.R.S. (2017). And it created the Commission to administer the Management Act. § 37-90-103(8). One of the Commission's administrative duties is to "determine designated groundwater basins and subdivisions thereof by geographic description." § 37-90-106(1)(a). It must also "supervise and control the exercise and administration of all rights acquired to the use of designated groundwater." § 37-90-111(1)(a).

¶19 While the Management Act vests in the Commission authority over groundwater administration, the 1969 Act vests in water courts "exclusive jurisdiction of water matters." § 37-92-203(1). Water matters within the purview of the 1969 Act are those matters involving the administration of "all water in or tributary to natural surface streams, not including nontributary groundwater." § 37-92-102(1)(a). Indeed, the 1969 Act expressly excludes "designated groundwater" from its scope. See § 37-92-103(13).

¶20 This statutory framework establishes that the Commission has jurisdiction over designated-groundwater matters, whereas the water courts have jurisdiction over matters not involving designated groundwater. But some water disputes involve both designated-groundwater interests and surface-water interests. We have seen this type of dispute when, as here, an owner of surface-water rights complained that well-pumping within a designated groundwater basin was causing injury to its surface rights, Gallegos, 147 P.3d at 24–25; Pioneer Irrigation Dists. v. Danielson, 658 P.2d 842, 844 (Colo. 1983), when various parties opposed an application to divert water from a well within a designated groundwater basin, State ex rel. Danielson v. Vickroy, 627 P.2d

13

752, 755 (Colo. 1981), and when an application to appropriate storm runoff implicated designated groundwater, Meridian Serv. Metro. Dist., ¶¶ 6–7, 361 P.3d at 394.

¶21 No matter the facts of the case, however, "[w]e have long and consistently held that in the context of such a jurisdictional conflict, the Commission must make the initial determination as to whether the controversy implicates designated ground water." Id. at ¶ 20, 361 P.3d at 396. Jurisdiction vests in the water court only after the Commission first concludes that the water at issue is not designated groundwater. Id. A party seeking to alter a designated groundwater basin's boundaries must therefore first make that factual showing to the Commission, rather than "jump[ing] straight to the issue of what the relief would be if the asserted injury were true." Gallegos, 147 P.3d at 32.

## C. Application

¶22 The Foundation argues that it should be able to sidestep this jurisdictional rule because of the change of law effected by S.B. 52 and the nature of its claim. In the Foundation's view, the pre-S.B. 52 version of section 37-90-106—which had no cut-off date to challenge improperly designated wells—should control this dispute. To instead apply S.B. 52, which eliminated that previously available challenge, would deprive surface-water users of their ability to protect their water rights within the NHP Basin. And because S.B. 52 would prevent the Foundation from excluding wells harming its senior water rights from the NHP Basin's boundaries, the Foundation argues that it has stated a claim that is sufficiently ripe for the water court's resolution. That claim— unlike those in Meridian, Gallegos, Pioneer Irrigation, and Vickroy—is not a challenge

14

to designated groundwater, but is rather a constitutional challenge to the statutory framework itself. So the Foundation asserts that, because the Commission cannot entertain its constitutional claim, the water court—which has broad jurisdiction over "water matters"—must.

¶23 We are not persuaded that this case warrants departure from our longstanding precedent requiring the Commission to first determine whether the water at issue is designated groundwater. And here, the Commission has made no factual determination as to the water's status. Thus, because the Foundation's constitutional claim still requires that determination to succeed, the claim is not yet ripe.

¶24 The Foundation's claim presupposes that the permitted wells within the NHP Basin are not pumping "designated groundwater," as defined by Colorado law. But the Commission has made no such determination, and until it does, jurisdiction cannot vest in the water court: "Jurisdiction shifts to the water court <u>only if</u> the Commission concludes that the water at issue is not designated ground water." <u>Meridian</u>, ¶ 20, 361 P.3d at 396 (emphasis added). If the Commission determines that the water at issue is not designated groundwater, then jurisdiction will vest in the water court. <u>See</u> <u>Gallegos</u>, 147 P.3d at 30. But if the Commission determines that the water at issue <u>is</u> designated groundwater, then the Foundation's constitutional claim will become moot, as the water court rightly concluded. Either way, the Commission must make that threshold determination before the water court can gain jurisdiction. We have made clear that a party should not "jump[] straight to the issue of what the relief would be if the asserted injury were true." <u>Id.</u> at 32.

¶25    That the Foundation's claim is an as-applied constitutional challenge to S.B. 52 does not change our analysis.  To prevail on such a claim, the Foundation must "establish that the statute is unconstitutional under the circumstances in which [it] has acted or proposes to act."  People v. Maxwell, 2017 CO 46, ¶ 7, 401 P.3d 523, 524 (quoting Qwest Servs. Corp. v. Blood, 252 P.3d 1071, 1085 (Colo. 2011)).  But the Foundation concedes that it ultimately aims to alter the NHP Basin's boundaries to exclude any wells that are injuring the Foundation's senior surface-water rights.  To do so, it must first demonstrate to the Commission that the wells are not pumping designated groundwater.  Only then can it assert its various constitutional arguments.  But the Foundation did not first go to the Commission, so it cannot yet claim that S.B. 52 is unconstitutional as applied.

¶26    Thus, the Foundation has not met its burden of proving that the water court had jurisdiction to entertain its constitutional claim.  See Cash Advance & Preferred Cash Loans, 242 P.3d at 1113.  We therefore conclude that the water court correctly dismissed that claim for lack of subject matter jurisdiction.

### III. Conclusion

¶27    For the reasons stated, we conclude that the water court correctly dismissed the Foundation's claim for lack of subject matter jurisdiction.  Thus, we affirm the water court's ruling.

16